Isaac I. WHITE

v.

GENERAL MOTORS CORPORATION.

No. K–81–1434.

United States District Court,
D. Maryland.

March 29, 1982.

Alan Hilliard Legum, Annapolis, Md., for plaintiff.

Joseph G. Finnerty, Jr., Edward S. Digges, Jr., Francis B. Burch, Jr., and Robert J. Mathias, Baltimore, Md., for defendant.

FRANK A. KAUFMAN, Chief Judge.

This diversity [1] case arises out of an automobile accident which occurred in Somerset County, Maryland, on or about October 21, 1979. One of the automobiles involved in the accident, a 1973 Pontiac Firebird manufactured by defendant General Motors Corporation (GM), was being driven by the wife of plaintiff. The collision allegedly caused plaintiff's wife to sustain serious injuries resulting in her death. Asserting negligence, strict liability and breach of implied and express warranty, plaintiff claims that design defects in the 1973 Firebird which his wife was driving contributed to her injuries and death.[2]

Subsequent to the accident and in exchange for the payment of $28,000, plaintiff executed three releases in favor of the driver of the other automobile involved in the accident.[3] The releases provided that in consideration of the sum paid, plaintiff agreed to release the allegedly at-fault driver,

> ... his successors and assigns, and/or his, her, their, and each of their associates, heirs, executors and administrators, *and any and all other persons, associations and corporations, whether herein named or referred to or not,* of and from any and every claim, demand, right, or cause of action, of whatsoever kind or nature, either in law or in equity, arising from or by reason of any bodily and/or personal injuries known or unknown sustained by

---

1. Plaintiff is a citizen of Maryland. Defendant is a Delaware corporation with its principal place of business in Michigan. The alleged amount in controversy exceeds $10,000. Accordingly, subject matter diversity jurisdiction is present under 28 U.S.C. § 1332.

2. Plaintiff contends that the hood and hood latches of that car were defectively designed, but for which the hood would not have come

through the windshield upon impact with the other automobile.

3. One release is signed by plaintiff in his individual capacity, the second as personal representative of his wife's estate, and the third as personal representative of his wife's estate and as "husband of Wessene White."

... [plaintiff], and/or damage to property, or otherwise, as the result of a certain accident which happened on or about the 21st day of October, 1979 for which ... [plaintiff had] claimed the ... [at fault driver] to be legally liable, but this release shall not be construed as an admission of such liability.[4]

(emphasis supplied). The uncontradicted affidavit of the attorney for the casualty insurance carrier for the allegedly at-fault driver, who, as such attorney, represented that driver and the insurer in connection with the settlement with plaintiff, authenticates the releases and states that plaintiff was represented by counsel during the negotiations which led to the execution of the releases. Upon those uncontroverted facts, GM has moved for summary judgment, contending that the releases protect it from any possible liability owed by it to plaintiff and asserted by plaintiff.

In *Pemrock, Inc. v. Essco, Inc.*, 252 Md. 374, 249 A.2d 711 (1968), Pemrock, and its mortgagee, sued the insurance company which had insured Pemrock against wind damage, in connection with the destruction of two prefabricated poultry houses which the plaintiff owned. The defendant insurance company impleaded the builder of those structures and the designer-supplier of certain items incorporated in the structures. Plaintiff subsequently filed an amended complaint adding the builder and designer-supplier as parties defendant. In settlement with the insurance carrier, Pemrock and its mortgagee signed a general release in favor of that insurer, and of

... all other persons, firms, corporations, associations or partnerships of and from any and all claims, actions, causes of action, demands, rights, damages, costs, loss of service, expenses and compensation whatsoever, which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to re-

sult from the accident, casualty or event which occurred on or about the 30th day of January, 1966 at or near Pemberton Drive, Rt. 5, Salisbury, Wicomico County, Maryland, and particularly with reference to any Company liability under its Policy No. 49651 dated August 1, 1964, issued to Pemrock, Inc., and all endorsements made and attachable or attached thereto.

252 Md. at 376–7, 249 A.2d 711. Chief Judge Hammond held that by its very terms the release "acquitted and discharged forever not only [the insurance carrier] but all other persons, firms, corporations, associations and partnerships ...." *id.* at 380, 249 A.2d 711, and that even though there was evidence in the record which indicated that Pemrock had intended to release only the insurance company and to settle only the question of whether wind caused the destruction and not to deal with the factual issues relating to defective construction and causal relationship of the latter to damages suffered, the release was so clear on its face that parol evidence of any contrary intent of the parties was properly excluded. *Id.* at 379–84, 249 A.2d 711. Subsequently, in *Peters v. Butler*, 253 Md. 7, 10, 251 A.2d 600 (1969), Judge Hammond wrote that in *Pemrock* "we held that a general release to all mankind barred further suits against other entities involved in the occurrence which produced the settlement with one participant that led to the release."

*Stefan v. Chrysler Corp.*, 472 F.Supp. 262 (D.Md.1979), *aff'd without published opinion*, 622 F.2d 587 (4th Cir. 1980), is a diversity case virtually on all fours, factually, with the within case. In *Stefan*, the plaintiff had been injured when her automobile was struck from the rear while she was waiting to make a left turn. After settling with the at-fault driver and executing a release which also absolved "any other persons, firms, and corporations, whether herein named or referred to or not, of and from any and all past, present and future" liability, *id.* at 263, the plaintiff brought suit against Chrysler alleging negligent design

---

4. That same language is contained in each of the three releases.

of her automobile's parking brake and breach of warranty. Relying upon *Pemrock* and *Peters v. Butler,* Judge Northrop held that the plaintiff in *Stefan* was barred by the release from proceeding against Chrysler, and rejected the contention that the Uniform Contribution Among Tortfeasors Act, Md. Ann. Code art. 50, §§ 16–24 required a different result. Judge Northrop noted (at 264) that that statute had been in effect long before *Pemrock* and *Peters v. Butler* and wrote (*id.* at 264 n.1):

> The Fifth Circuit, in *Morison v. General Motors Corp.,* 428 F.2d 952 (5th Cir.), *cert. denied,* 400 U.S. 904, 91 S.Ct. 142, 27 L.Ed.2d 141 (1970), explains the policy reasons for allowing an unnamed defendant to have the benefit of a general release, especially in light of the Uniform Act. The defendant who originally procures the release gains nothing if the plaintiff can sue other joint or concurrent tortfeasors. In such a case, the original defendant is left open to claims for contribution and/or indemnity and winds up having to litigate the case anyway. *See* Md. Ann. Code art. 50, § 20.[5]

In the within case, plaintiff contends that GM and the at-fault driver are not joint tortfeasors, since this is an "enhanced injury" or "second collision" case, meaning that plaintiff claims that had the vehicle his wife was driving at the time of the accident been free of any design defects, she would have still been injured but her injuries would not have been as severe as they were.

The use of the term "second collision" points up the "enhanced damages" aspect of these cases. It derived from the reasoning that had the manufacturer properly anticipated the danger and provided a reasonable safety design the injury would have been limited to that derived from the original impact. Without the safety device, the victim was involved in a "second collision" following the initial impact, usually within the vehicle itself, from which his injuries were derived or enhanced. It is only for the heightened degree of damage that a defectively designed products manufacturer may be held liable, *i.e.,* the total injury less that which would have been sustained even with the absent safety feature. In more familiar terms, enhancement is nothing more than the requisite causation element linking the defect to the injury. *Lahocki v. Contee Sand & Gravel Co.,* 41 Md.App. 579, 583–4, 398 A.2d 490 (1979) (Lowe, J.), *rev'd on other grounds,* 286 Md. 714, 410 A.2d 1039 (1980).

GM could, at most, in the within case be liable only for that portion of plaintiff's injuries which GM itself caused, *i.e.,* the "enhanced" injuries.[6] In *Higginbotham v. Ford Motor Co.,* 540 F.2d 762 (5th Cir. 1976), Judge Goldberg, construing Georgia law in a diversity case, wrote (at 774):

> . . . the fact that Ford is liable only for the injuries over and above those that would have occurred in a crashworthy car convinces us that a rational basis for apportionment exists. Just as Ford proximately caused only the enhancement of injuries, so should it be liable only for the amount by which its defective product enhanced the injuries. Thus, on retrial, if the jury finds proximate causation, it should also be asked to apportion the total amount of the personal injury damages between Ford and the [at-fault driver].

Similarly, in Maryland, apportionment of damages in "enhanced injury" cases is permitted. *Lahocki v. Contee Sand & Gravel Co.,* 41 Md.App. *supra* at 589–96, 398 A.2d 490. However, that statement does not limit the plaintiff in his claim for damages

---

**5.** Section 20 reads as follows:

> A release by the injured person of one joint tort-feasor does not relieve him from liability to make contribution to another joint tortfeasor unless the release is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued,

and provides for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors.

**6.** *See* Restatement (2d) of Torts, §§ 881 and 433A.

against the at-fault driver who is liable to plaintiff for the enhanced injuries, as well as the nonenhanced injuries suffered by plaintiff, since without the tortious conduct of the at-fault driver, the plaintiff would not have suffered any injury. *See Huddell v. Levin*, 537 F.2d 726, 738 (3d Cir. 1976), in which Judge Aldisert wrote:

> ... Clearly, if the theoretical underpinnings for liability in ... ["second collision" cases] are to be given effect, Levin [the at-fault driver] may be held liable for *all* injuries, but General Motors may only be held liable for "enhanced injuries."

(emphasis in original). Accordingly, the at-fault driver in this case would be entitled to require contribution from GM with respect to any portion of the injuries attributable to GM's conduct. GM is correct in pointing out that a number of courts have categorized, either implicitly or explicitly, parties in the situations of GM and the at-fault driver in this case as "joint tortfeasors."[7]

GM seeks to illustrate its position with the following hypothetical:

> Driver, A, recklessly propels his vehicle into a tree at 50 mph. Passenger, B, sustains injury when a shard of glass from the windshield strikes him in the face. B sues A and car company, C. B's proof, accepted by the jury, is that C's windshield was defective, that had it not been defective it would not have shat-

tered and injured B, and that because of the peculiar circumstances of this accident and because of the fact that B was holding a large box of paper goods in his lap at time of impact, he would have sustained no injury had the glass not shattered.... Both A and C are liable to B. Both are liable for the same injury. The injury was the product of two separate acts of negligence which combined to produce one result. All of the injuries are enhanced. GM submits that A and C are joint tortfeasors and that any rule barring a contribution claim by C against A would violate not only traditional tort principles but logic and fairness as well.

GM is correct in its contention that under those hypothetical facts, A and C are liable to B. But, in addition, insofar as the enhanced damages are concerned, C is liable for contribution to A, and A is liable for contribution to C. Therefore, there is a basis for A, upon entering into a general release agreement with B, to protect himself from a later possible claim for contribution by C. That is true whether A and C are labelled as joint tortfeasors, concurrent tortfeasors, or something else.[8]

This case is simply not a case like *Kyte v. McMillion*, 256 Md. 85, 259 A.2d 532 (1969) or *Huff v. Harbaugh*, 49 Md.App. 661, 435 A.2d 108 (1981), in which different releases have been held not to release all potential defendants from liability. In *Kyte*, plain-

---

**7.** *See, e.g., Stefan v. Chrysler Corp., supra*, 472 F.Supp. 262, 264 n.1 (D.Md.1979), *aff'd without published opinion*, 622 F.2d 587 (4th Cir. 1980); *Huddell v. Levin*, 395 F.Supp. 64, 79 (D.N.J. 1975), *vacated and remanded on other grounds*, 537 F.2d 726 (3d Cir. 1976); *Badorek v. General Motors Corp.*, 11 Cal.App.3d 902, 90 Cal.Rptr. 305, 320–22, 332 (1971); *Lahocki v. Contee Sand & Gravel Co., supra*, 41 Md.App. 579, 613-22, 398 A.2d 490 (1979), *rev'd on other grounds*, 286 Md. 714, 410 A.2d 1039 (1980); *General Motors Corp. v. Simmons*, 558 S.W.2d 855, 859 (Tex.1977). But see *Huddell v. Levin, supra*, 537 F.2d 726, (3d Cir. 1976) (Rosenn, J. concurring):

> We recognize that Levin and General Motors are not joint tortfeasors, that one is charged with negligence and the other as a manufacturer of a defective product, that each has acted independently, and because their acts are alleged to have combined con-

temporaneously to cause the injuries, they are, at most, concurrent tortfeasors.

**8.** "The terms 'joint tort' and 'joint tortfeasors' have been surrounded by no little uncertainty and confusion. There have been various attempts to define them, and to propose tests of one kind or another as to when this may be found to exist. An examination of the multitude of cases in which they are to be found leads to the conclusion that they have meant very different things to different courts, and often to the same court, and that much of the existing confusion is due to a failure to distinguish the different senses in which the terms are used, which often has had an unfortunate effect upon the substance of the law." Prosser, Torts p. 291 (4th Ed. 1977).
Quoted in *Huff v. Harbaugh*, 49 Md.App. 661, 665–6 n.1, 435 A.2d 108 (1981).

tiff was injured in an auto accident and then was taken to a hospital where she was negligently given a quantity of the wrong type of blood. In settling with the hospital, the plaintiff executed a release which covered damages caused only

> ... as the result of and by reason of *treatment rendered to the said EDNA ARLENE KYTE, infant, at UNION ME-MORIAL HOSPITAL commencing on January 3, 1967 and thereafter, specifically including but not limited to a transfusion of blood.*

256 Md. at 90, 259 A.2d 532 (emphasis in original).

In *Huff*, plaintiffs, whose property interests were damages by fire, brought suit against two parties whose negligence allegedly had caused the fire and against an insurance agent who had promised to obtain fire insurance for the property, but had failed so to do. Plaintiff settled the case with the defendants who allegedly had caused the fire, and executed a release which provided, *inter alia* :

> It is the express understanding therein that Releasors are releasing their claims against the Releasees, only, and this release and compromised amount is not intended to be, nor shall it be construed to be, a release of any insurer, insurance company or insurance agent or broker, for any failure to place or provide insurance coverage for the property, which cause of action, if any, is expressly reserved to the Releasors.

49 Md.App. at 664–5, 435 A.2d 108.

By way of contrast with the releases executed in *Kyte* and in *Huff*, the releases herein, in *Pemrock*, in *Peters v. Butler*, and

in *Stefan*, are "all inclusive" (*Stefan* at 264), and by their very terms cover *all* injuries suffered by plaintiffs wife in the October 21, 1979 accident.

While Chief Judge Hammond in *Pemrock* did not address the question in terms of any third-party beneficiary analysis, the result in that case suggests that GM may, in this case, be a third party beneficiary of the releases executed by plaintiff White. *See Shillman v. Hobstetter*, 249 Md. 678, 687–90, 241 A.2d 570 (1967), in which the Court indicated that the intention of the parties to a contract controls the determination of whether or not a benefit is conferred upon a third-party beneficiary. In so doing, Judge Barnes quoted, *inter alia*, the following from *Restatement of Contracts*, § 133:

> "(1) Where performance of a promise in a contract will benefit a person other than the promisee, that person is, except as stated in Subsection (3) [inapplicable herein]: (a) a donee beneficiary if it appears from the terms of the promise in view of the accompanying circumstances that the *purpose* of the promisee in obtaining the promise of all or part of the performance thereof is to make a gift to the beneficiary or to confer upon him a right against the promisor to some performance neither due nor supposed or asserted to be due from the promise to the beneficiary; ..."

*Id.* at 688, 241 A.2d 570.[9] (emphasis supplied). In *Pemrock*, the Court found in the language of the release a clearly expressed an unambiguous intention to benefit not only the defendant insurance company actually a party in that case, but also all other persons potentially liable to the plaintiff for

**9.** Nothing in the *Restatement 2d of Contracts* change this reasoning. Section 302 of the Restatement 2d provides:

*Intended and Incidental Beneficiaries*
(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or

(b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance.
(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.
As the Introductory Note to Chapter 14 of the Restatement makes clear, the new terminology—the words "intended" and "incidental"—results from the desire to avoid the "overtones of obsolete doctrinal difficulties" engendered by the use of certain former labels.

the injury involved.[10] Herein, a similar intention is shown by the plain language of the releases executed between plaintiff and the at-fault driver, just as it was by the language of the release in *Pemrock*.

For the reasons set forth in this opinion, GM's summary judgment motion will be granted and judgment will be entered for GM.

---

**10.** The fact that the other persons released are not named in the release instrument is immaterial from the point of view of the third-party beneficiary doctrine, since, as Professor Corbin, in 4 Corbin on Contracts, § 781 states: "If a class of persons is clearly designated as beneficiaries, an individual of that class can maintain suit even though not specifically named." *Shillman v. Hobstetter, supra*, 249 Md. at 689 n.1, 241 A.2d 570.