830 F.2d 535
 William Douglas AUER, Appellant,
v.
KAWASAKI MOTORS CORP., U.S.A., Appellee,
and
Kawasaki Heavy Industries, Ltd., A Body Corporate of Kobe,
Japan, Defendant.
Evan EBAUGH, Appellant,
v.
CESSNA AIRCRAFT COMPANY, Appellee.
 Nos. 85-1591, 85-2331.
 United States Court of Appeals,
Fourth Circuit.
 Argued Dec. 8, 1986.
Decided Oct. 6, 1987.
 
 Lois Rudo Karp, Baltimore, Md., Joel I. Klein (Christopher D. Cerf, Onek, Klein & Farr, Washington, D.C., Robert T. Hall, Douglas K.W. Landau, Hall, Surovell, Jackson & Colten, P.C., Fairfax, Va., Eugene I. Glazer, Baltimore, Md., on brief, for appellants.
 Carl F. Ameringer, Baltimore, Md., Thomas L. Appler (John E. McIntosh, Jr., Boothe, Prichard & Dudley, Fairfax, Va., Michael Esher Yaggy, Michael S. Barranco, Baltimore, Md., on brief), for appellees.
 Before WINTER, Chief Judge, RUSSELL, WIDENER, HALL, PHILLIPS, SPROUSE, ERVIN, CHAPMAN, WILKINSON and WILKINS, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge, sitting en banc.
 HAYNSWORTH, Senior Circuit Judge:
 
 
 1
 These two cases were heard by individual panels of the court, but before a decision in either case, the judges of the court in regular active service voted unanimously to rehear the cases en banc.
 
 
 2
 These personal injury actions in the diversity jurisdiction present a common question of the applicable law, state or federal, in determining the effect of a release of one joint tortfeasor upon the state created rights and liabilities of other alleged joint tortfeasors, defendants in pending federal actions. More specifically, we are called upon to determine the reach of Gamewell Manufacturing, Inc. v. HVAC Supply Co., Inc., 715 F.2d 112 (4th Cir.1983), in which it was held that the validity of a release of a federal claim, the subject of a pending federal court action, was to be determined under federal rather than state law. Since the question in these cases is the effect of releases, concededly valid as between the parties, upon the rights and liabilities of alleged joint tortfeasors, rights and liabilities derived from state law, the effect of the releases upon those third parties is to be determined under state law.
 
 
 3
 Applying the appropriate state law, we conclude in each case that the release of one joint tortfeasor effectively released the other alleged joint tortfeasors. Hence, we affirm the grant of summary judgment for the defendant in each case.
 
 I.
 A. Auer v. Kawasaki
 
 4
 While riding his Kawasaki motorcycle, William Auer collided with a garbage truck owned by Browning-Ferris Industries and suffered personal injury. He brought suit in a Maryland state court against Kawasaki USA, the American distributor, alleging product liability claims. Kawasaki removed the action to the federal district court, and filed an answer. Auer also brought suit in a Maryland state court against BFI and Schirmacher, the driver of the garbage truck, alleging negligence in the truck's operation.
 
 
 5
 Auer and BFI reached a settlement agreement. With the advice of counsel, Auer signed and delivered a document entitled "Release of All Claims," which provided that,
 
 
 6
 FOR AND IN CONSIDERATION of ... [$5,000] ... I ... forever discharge [BFI and Schirmacher] and all other persons, firms and corporations who might be liable of and from any and all actions ... on account of, or in any way growing out of ... [the] accident that occurred [between Auer and the garbage truck]....
 
 
 7
 ....
 
 
 8
 This release contains the ENTIRE AGREEMENT between the parties....
 
 
 9
 Kawasaki's lawyer received a copy of the release. Kawasaki's answer was amended to include the defense of release, and a motion for summary judgment on that defense was filed. The lawyers for Auer and BFI then executed an amended release with an explanatory preamble in which they undertook to rescind the earlier release. They stated in the preamble that the original release was "not in any way intended to confer any benefit on the distributor and/or manufacturer of the vehicle operated by ... Auer." The recital continued that, because the "previously executed release could be misconstrued to confer an unanticipated benefit" on Kawasaki, "counsel [for both parties] ... hereby agree to rescind the prior release and declare same to be null and void."
 
 
 10
 In granting summary judgment, the district court held that, under Maryland law, the first release discharged Kawasaki and the attempted rescission was not an effective revocation of that discharge.
 
 B. Ebaugh v. Cessna
 
 11
 Evan Ebaugh was one of three passengers on a Cessna 172H Skyhawk which took off from the Waynesboro, Virginia airport on July 25, 1979. Some thirty minutes later the plane crashed in the foothills of the Blue Ridge Mountains of Virginia. The cause of the crash has not been determined.
 
 
 12
 Ebaugh and the other passengers filed suit in the United States District Court for the Western District of Virginia, seeking recovery for their personal injuries. They named as defendants Cessna, manufacturer of the airplane, Augusta Aviation Corporation, owner of the plane, Teledyne Continental Motors, manufacturer of the plane's engine, and Anne Adams, the plane's senior pilot. Augusta Aviation settled the claim against it, and paid $40,000 in return for a covenant not to sue. Later, after the filing of a FAA report which stated that no defect in or malfunction of the engine had been found, the plaintiffs agreed to settle with Teledyne Continental for $2,000. The plaintiffs and Teledyne filed a joint motion for dismissal of the claims against Teledyne with prejudice. That motion was granted.
 
 
 13
 Still later, in order to avoid dismissal under Federal Rule 37(b) for non-compliance with discovery orders, Ebaugh took a voluntary dismissal without prejudice of his action against Cessna pursuant to Rule 41(a)(2). He then filed a new action against Cessna in the Circuit Court for the City of Richmond. That action was removed to the United States District Court for the Eastern District of Virginia and then transferred to the Western District of Virginia.
 
 
 14
 Summary judgment was then granted Cessna upon the ground that, under Virginia law, dismissal of the claim against Teledyne Continental with prejudice constituted a release, which extinguished Ebaugh's claim against Cessna.
 
 II.
 
 15
 No one doubts that a federal court called upon to adjudicate a state law claim in the diversity jurisdiction must apply the relevant state law in determining the substantive rights and duties of the parties, while applying federal law to matters of procedure. Erie Railroad v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The line between the two is not always bright, however. Byrd v. Blue Ridge Rural Electric Cooperative, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1957); Wratchford v. S.J. Groves & Sons Co., 405 F.2d 1061 (4th Cir.1969).
 
 
 16
 In Gamewell, the question was the validity of the settlement agreement of a federal claim pending in a federal court. The plaintiff, Gamewell Manufacturing, had sued HVAC Supply for patent infringement. Because of a mixup of samples, Gamewell received a laboratory report indicating that its patented process was not superior to earlier art. It accepted the defendant's settlement offer. It then learned of the mixup of samples and obtained a new laboratory report indicating that the results of the patented process were substantially superior to results obtainable under the prior art. The district court declined to recognize Gamewell's attempted rescission of the settlement agreement because North Carolina law did not permit rescission of a contractual agreement on the basis of a unilateral mistake. On appeal, this court held that the validity of the agreement was to be determined under federal law, and remanded the case for redetermination.
 
 
 17
 The claim in Gamewell was one of patent infringement, a claim springing solely from federal law. See Aro Manufacturing Co. v. Convertible Replacement Top Co., 377 U.S. 476, 84 S.Ct. 1526, 12 L.Ed.2d 457 (1964). Such a claim is far removed from state law and substantive rights that are the creatures of state law. See id. at 501, 84 S.Ct. at 1540; see also Graham v. John Deere Co., 383 U.S. 1, 5-10, 86 S.Ct. 684, 687-90, 15 L.Ed.2d 545 (1966).
 
 
 18
 The majority in Gamewell went further, however. It held that even when the substantive rights of the parties are derived from state law, there is still a distinct federal interest in the procedural aspects of settling or releasing claims pending in a federal court. The court said:
 
 
 19
 Once a claim--whatever its jurisdictional basis--is initiated in the federal courts, we believe that the standards by which that litigation may be settled, and hence resolved short of adjudication on the merits, are preeminently a matter for resolution by federal common law principles, independently derived.
 
 
 20
 Gamewell, 715 F.2d at 115 (citation and footnote omitted).
 
 
 21
 With respect to pending federal litigation, the federal court has a legitimate interest in controlling its docket and insuring fair dealing among the parties and between the parties and the court. See White Farm Equipment Co. v. Kupcho, 792 F.2d 526, 529 (5th Cir.1986); see also Atkins v. Schmutz Manufacturing Co., 435 F.2d 527, 536 (4th Cir.1970), cert. denied, 402 U.S. 932, 91 S.Ct. 1526, 28 L.Ed.2d 867 (1971). Those interests are distinctly procedural in nature, and the Gamewell court found them predominant when the question was the validity of the settlement agreement as between the settling parties themselves. The focus must change dramatically, however, when the question is the effect of a release upon the rights and duties of third parties. When those substantive rights and duties are derived from state law, the effect upon them by another party's settlement must be determined under state law. E.g., Hageman v. Signal L.P. Gas, Inc., 486 F.2d 479, 487 (6th Cir.1973); see also Fairfax Countywide Citizens Association v. County of Fairfax, 571 F.2d 1299, 1303 (4th Cir.), cert. denied, 439 U.S. 1047, 99 S.Ct. 722, 58 L.Ed.2d 706 (1978).
 
 
 22
 In these two cases the question is the effect of a release by the plaintiff of one of the joint tortfeasors but not the others. The substantive rights of the parties here are governed by state law. In states recognizing rights of contribution among joint tortfeasors, those rights are implicated. State law immunity from further prosecution of the civil claim is directly involved, and state law must control the result in the absence of federal preemption. See Carolina Casualty Insurance Co. v. Insurance Co. of North America, 595 F.2d 128, 139-40 (3d Cir.1979); see also Tiesler v. Martin Paint Stores, Inc., 76 F.R.D. 640, 643 (E.D.Pa.1977); Brooks v. Brown, 307 F.Supp. 907, 909-10 (E.D.Va.1969).
 
 
 23
 The Gamewell opinion should be read in light of the procedural question presented. It cannot be read to mean that the effect of a release of a state law claim upon third parties having rights and duties defined by state law is to be determined as a matter of federal procedure. We conclude that the district court in each of these cases properly applied state law in determining the effect of the release.III.
 
 A. Auer v. Kawasaki
 
 24
 The original release was a completely integrated document that, by its terms, operated in favor of "all ... corporations who might be liable" to compensate Auer for his injuries. Unequivocally, it discharged Kawasaki. Under applicable Maryland law at the time, such a release discharged joint tortfeasors not specifically mentioned in the release but generally described in it. It is of no moment that the unnamed beneficiary of the release gave no consideration for it, was being sued separately, or was confronted with a different theory of liability. See Pemrock, Inc. v. Essco Co., 252 Md. 374, 249 A.2d 711, 714-15 (1969); see also Peters v. Butler, 253 Md. 7, 251 A.2d 600, 602 (1969); White v. General Motors Corp., 541 F.Supp. 190, 191-94 (D.Md.1982); Stefan v. Chrysler Corp., 472 F.Supp. 262, 263-64 (D.Md.1979), aff'd, 622 F.2d 587 (4th Cir.1980) (table). The rule was changed by statute effective July 1, 1986. See Md.Ann.Code art. 79, Sec. 13 (Michie Supp.1986). Earlier, however, in the absence of fraud, duress or mutual mistake, parol evidence was inadmissible to alter or explain the terms of such a release. See Pemrock, 249 A.2d at 715-16; see also White, 541 F.Supp. at 191.
 
 
 25
 Maryland's strict enforcement of general releases was based in substantial part on the state's adoption of the Uniform Contribution Among Tort-feasors Act. Md.Ann.Code art. 50, Secs. 16-24 (1986). An unequivocal, unconditional release such as this "by an injured party of one joint tort-feasor does not relieve him from liability to make contribution to another joint tort-feasor." Id. Sec. 20. As the court observed in Stefan, "[t]he defendant who originally procures the release gains nothing if the plaintiff can sue other joint or concurrent tortfeasors.... [because] the original defendant is left open to claims for contribution and/or indemnity and winds up having to litigate the case anyway." Stefan, 472 F.Supp. at 264 n. 1 (citation omitted).
 
 
 26
 The evidence of the attempted rescission of the release is strongly indicative of the original intention of Auer and BFI, but under applicable Maryland law at the time, that evidence must be ignored.
 
 
 27
 While a releasee may consent to the recreation of a cause of action against it, two parties to a release may not recreate a discharged cause of action against a third party without the third party's consent. Cf. Swigert v. Welk, 213 Md. 613, 133 A.2d 428, 429-30 (1957).
 
 
 28
 Auer fares no better under his third party beneficiary analysis. Under the unequivocal language of the original release, Kawasaki can only be considered an "intended beneficiary." See White, 541 F.Supp. at 194. The power to modify the benefit accruing to such a beneficiary terminates when the beneficiary "brings suit on" the promise. Restatement (Second) of Contracts Sec. 311(3) (1981). Kawasaki's amendment of its answer to set up the release defense and its motion for summary judgment on that defense act as an equivalent bar to modification.
 
 
 29
 We can discern no mutual mistake of fact infecting the execution of the original release which would make it voidable. Neither can we subscribe to Auer's interpretation of that document which would place Kawasaki in breach if it sought to interpose the release as a bar to Auer's suit. The release provision prohibiting the pleading of the release as a bar to suit pertains only to the signer of the release, Auer. Any other construction would render the release meaningless.
 
 
 30
 Under applicable Maryland law at the time, the general release effectively discharged Kawasaki.
 
 B. Ebaugh v. Cessna
 
 31
 Ebaugh's case is governed by Virginia law.
 
 
 32
 For many years, Virginia followed the strict common law rule that the release of one joint tortfeasor operated as a release of all. See Wright v. Orlowski, 235 S.E.2d 349, 352 (Va.1977). In 1979, the Virginia General Assembly enacted Sec. 8.01-35.1 to provide that a covenant not to sue given in good faith to one joint tortfeasor would not discharge other joint tortfeasors unless there was specific provision for it. That statute was amended in 1980 to provide for a similar narrowing of a release given in good faith. That statute was amended yet again in 1982 to give it retroactive effect so as to apply to all covenants not to sue executed on or after July 1, 1979 and to all releases executed on or after July 1, 1980, regardless of the time of accrual of the affected cause of action. See Va.Code Sec. 8.01-35.1(D) (Michie Supp.1987).
 
 
 33
 The settlement between Ebaugh and Teledyne was reached in 1984, so that under the literal terms of the statute, release of Teledyne would not operate to the benefit of Cessna. Virginia courts have held, however, that the statute, under Virginia's Constitution, may not be given such a literal, retroactive effect to apply to rights accrued before the statutory change.
 
 
 34
 In Virginia, a joint tortfeasor's right to contribution is a substantive right which, although inchoate, arises at the time of the tortious injury. Potomac Hospital Corp. v. Dillon, 229 Va. 355, 329 S.E.2d 41, 44, cert. denied, 474 U.S. 971, 106 S.Ct. 352, 88 L.Ed.2d 320 (1985); Shiflet v. Eller, 228 Va. 115, 319 S.E.2d 750, 754 (1984). The substantive right has two components: a right to seek contribution and the right to be released when the injured person releases another joint tortfeasor. Bartholomew v. Bartholomew, 233 Va. 86, 353 S.E.2d 752, 755 (1987). Since, under the Virginia Constitution, the General Assembly is without power to impair such vested rights retroactively, see, e.g., Duffy v. Hartsock, 187 Va. 406, 46 S.E.2d 570, 574-75 (1948), we must apply Virginia law as it existed at the time of injury rather than at the time of the release. See Bartholomew, 353 S.E.2d at 756; Shiflet, 319 S.E.2d at 754-55; see also Carickhoff v. Badger-Northland, Inc., 562 F.Supp. 160, 165 (W.D.Va.1983).
 
 
 35
 Ebaugh was injured on July 25, 1979. A right of contribution from the other joint tortfeasors accrued to each joint tortfeasor at that time. Section 8.01-35.1 exempted only covenants not to sue and did not prevent application of the common law rule regarding the release of a joint tortfeasor. Perdue v. Sears, Roebuck & Co., 523 F.Supp. 203, 205-06 (W.D.Va.1981), aff'd, 694 F.2d 66 (4th Cir.1982).
 
 
 36
 There was no formal release or written memorial of the settlement agreement. It is undisputed, however, that, in return for the payment of $2,000 by Teledyne, the claims against it were consensually dismissed with prejudice. Ebaugh exchanged his cause of action against Teledyne for a sum of money with the effect of extinguishing his claim against Teledyne. Those are the essential characteristics of a release.
 
 
 37
 A release need not be in writing. It is enough that there has been an accord and satisfaction. As the Virginia Supreme Court has stated:
 
 
 38
 The making of an accord and the acceptance of satisfaction will effect a release. When a tortfeasee accepts satisfaction from one tortfeasor for the part he played in the joint tort, that tortfeasor is released and his release operates to release all other tortfeasors.
 
 
 39
 Wright, 235 S.E.2d at 353 (emphasis in original). Since the FAA report tended to exonerate Teledyne, the $2,000 paid by it was not unrepresentative of the part it played in the joint tort.
 
 
 40
 We find no error in the district court's conclusion that there had been an accord and satisfaction of Ebaugh's claim against Teledyne with the result that other joint tortfeasors were released.
 
 
 41
 The Virginia rule is based upon the Virginia Constitution. Farish v. Courion Industries, Inc., 754 F.2d 1111, 1115 n. 8 (4th Cir.1985) (en banc ). It is not impermissible under the Federal Constitution, and the federal courts are bound to follow it in situations in which it is applicable.
 
 IV.
 
 42
 The judgment of the district court in each case is affirmed.
 
 
 43
 AFFIRMED.
 
 
 44
 K.K. HALL, Circuit Judge, concurring in part and dissenting in part:
 
 
 45
 I concur in that part of the majority's opinion which affirms the district court's grant of summary judgment in favor of defendant Kawasaki and against Auer. I cannot agree with the Court's decision as to Ebaugh v. Cessna, however. Therefore, as to that part of the majority's holding, I must respectfully dissent.
 
 
 46
 In Auer v. Kawasaki, the settlement between the parties was achieved in state court, and thus, arguably, was beyond the reach of our holding in Gamewell. Moreover, all of the parties in that case agreed that state law was controlling. The only issue in Auer was whether the broad release executed by Auer released the other defendant, not a party to the agreement. Ebaugh, however, involved a release reached in the course of a federal proceeding. In Gamewell, we held that federal common law, not state law, governs the effect that a settlement with one tortfeasor has on other joint tortfeasors in all federal cases, including diversity actions. The majority now asks us to adopt the position that, while the validity of a release executed in federal court should be determined under federal law, the effect of that very same release upon third parties is to be determined under state law. I believe that neither Erie R.R. nor common sense commands such an interpretation.
 
 
 47
 The majority freely admits that, with respect to pending federal litigation, the federal court has a legitimate interest in controlling its docket and insuring fair dealing among the parties and between the parties and the court. Moreover, "[t]he federal system is an independent system for administering justice to litigants who properly invoke its jurisdiction." (Emphasis added). Byrd v. Blue Ridge Electric Cooperative, 356 U.S. 525, 537, 78 S.Ct. 893, 901, 2 L.Ed.2d 953 (1958).
 
 
 48
 The Court, by its holding today, completely ignores the clear intent of the parties involved. Furthermore, under this decision, a party could reach what it thought was a settlement (and an end to litigation) in federal court and then find itself being forced to litigate the effect of that settlement as to a third party in a state court proceeding.
 
 
 49
 For the foregoing reasons, I would affirm the district court's decision as to Auer but would reverse the district court's decision as to Ebaugh in accordance with this Court's prior holding in Gamewell.