**John Peter SINELLI, Jr., Plaintiff,**

v.

**FORD MOTOR COMPANY, Defendant.**

**Civ. No. H–92–1618.**

United States District Court,
D. Maryland.

Jan. 11, 1993.

Michael A. Marshall, Henry L. Belsky and Schlachman, Belsky and Weiner, Baltimore, MD, for plaintiff.

Paul G. Gill and McGuire, Woods, Battle & Boothe, Richmond, Virginia and Morton A. Sacks and McGuire, Woods, Battle & Boothe, Baltimore, MD, for defendant.

MEMORANDUM OPINION

ALEXANDER HARVEY, II, Senior District Judge.

Presently pending in this civil action is defendant's motion for summary judgment. Plaintiff John Peter Sinelli (hereinafter "Sinelli") has here sued Ford Motor Company (hereinafter "Ford"), seeking damages for personal injuries sustained by him in a motor vehicle accident. The Court's jurisdiction over this case is based solely upon diversity of citizenship. 28 U.S.C. § 1332. Memoranda both in support of and opposition to the pending motion have been filed by the parties and reviewed by the Court. Oral argument on the motion was heard in open court on December 31, 1992. For the reasons to be stated herein, defendant's motion for summary judgment will be granted.

I

*Background*

For purposes of the pending motion, the relevant facts can be stated briefly. On June 15, 1989, plaintiff Sinelli was involved in an automobile accident. At the time of the accident, Sinelli was driving a 1988 Ford Bronco II, an automobile manufactured by defendant Ford. The Bronco was owned by Sinelli's employer, S.C.F. Decks, Inc., which had purchased the vehicle in November of 1987. At the time of the accident, Sinelli was driving the Bronco with his employer's permission and was engaged in business related to his employment. Sinelli was the only person in the Bronco when the accident occurred. In the complaint which he has filed in this Court, Sinelli alleges that at the time of the accident he was wearing a safety belt, and that the safety belt was designed, manufactured, installed, and distributed by Ford.

While the precise cause of the collision and the extent of Sinelli's injuries need not be determined for purposes of the pending motion, the following facts are derived from plaintiff's complaint, as well as from a deposition of Sinelli taken in this case. The collision occurred on June 15, 1989 at approximately 4:10 p.m. near the intersection of Washington Boulevard and Arbutus Avenue in Baltimore, Maryland. Sinelli was heading south on Washington Boulevard. Marsha Lynn Redd was eastbound and attempted to make a left turn from Arbutus Avenue into the northbound lane of Washington Boulevard. However, before Redd could complete her turn, the front of Sinelli's Bronco collided with the left side of Redd's automobile. Sinelli alleges that at the time of the impact his safety belt failed to function properly in that it failed to restrain his body. As a result of this alleged failure, Sinelli asserts that he suffered various physical injuries.

Plaintiff previously filed a complaint in the Circuit Court for Baltimore County against Diana Lynn Redd, the mother of Marsha Lynn Redd and the owner of the Redd automobile. Sinelli's complaint in this prior action alleged, in essence, that the June 15, 1989 accident was caused by Marsha Redd's negligence. Prior to trial, the parties reached a settlement. In exchange for the sum of $93,000 Sinelli on November 8, 1990, entered into a release agreement with the Redds (hereinafter, "the Sinelli–Redd release"). The relevant portion of the Sinelli–Redd release is as follows:

I [Sinelli], being of lawful age, have released and discharged, and by these presents do for myself, my heirs, executors, administrators and assigns, release, acquit and forever discharge Marsha Lynn Redd and Diana Lynn Redd *and any and all other persons, firms and corporations, whether herein named or referred to or not,* of and from any and all past, present and future actions, causes of action, claims demands, damages, costs, loss of services, expenses, compensation, third party actions, suits at law or in equity, including claims or suits for contribution and/or indemnity, of whatever nature, and all consequential damage on account of, or in any way growing out of any and all known and unknown personal injuries, death and/or property damage *resulting or to result from an accident that occurred on or about the 15th day of June 1989,* at or near Wash-

ington Blvd. and Arbutus Ave, Baltimore. (emphasis added)

Sinelli filed his complaint against Ford in this Court on June 6, 1992. The complaint asserts three theories of liability. Count I alleges a claim of strict liability. Count II alleges a claim of breach of an implied warranty of merchantability. Count III alleges a claim of negligence. All three claims are based upon the alleged failure of the Bronco's safety belt to function properly at the time of the collision.

On October 26, 1992, Ford filed the motion for summary judgment which is now pending before the Court. In support of its motion, Ford contends, *inter alia,* that all claims against it by Sinelli were discharged by the Sinelli–Redd release. Additional arguments have been advanced by Ford in support of its motion, but inasmuch as the Court has concluded that all claims against Ford were previously discharged by the Sinelli–Redd release, it is not necessary for the Court to address these other arguments.[1]

## II

### Discussion

The issue to be decided here is what effect, if any, the Sinelli–Redd release has upon the liability of Ford for injuries allegedly suffered by Sinelli. As set forth in Rule 56(c), F.R.Civ.P., the standard for the granting of a motion for summary judgment is that the moving party must show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

One of the purposes of Rule 56 is to require a party, in advance of trial and after a motion for summary judgment has been filed and supported, to come forward with some minimal facts to show that it may not be subject to the defenses asserted. *See* Rule 56(e). A "mere scintilla of evidence is not enough to create a fact issue; there must be evidence on which a jury might rely." *Barwick v. Celotex*

*Corp.,* 736 F.2d 946, 958–59 (4th Cir.1984), quoting *Seago v. North Carolina Theatres, Inc.,* 42 F.R.D. 627, 640 (E.D.N.C. 1966), *aff'd,* 388 F.2d 987 (4th Cir.1967). In the absence of such a minimal showing, a party moving for summary judgment should not be required to undergo the expense of preparing for and participating in a trial of the issue challenged. *See Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The burden is on the party moving for summary judgment to show that no genuine issue of fact exists and that the movant is entitled to judgment as a matter of law. *Barwick v. Celotex, supra,* at 958. The facts and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). Nevertheless, the Fourth Circuit has stated that, with regard to motions for summary judgment, trial judges have "an affirmative obligation ... to prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987), quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Furthermore, the Fourth Circuit has held that "[i]f a court properly determines that [a] contract is unambiguous on the dispositive issue, it may then properly interpret the contract as a matter of law and grant summary judgment because no interpretive facts are in genuine issue." *World–Wide Rights Ltd. v. Combe Inc.,* 955 F.2d 242, 245 (4th Cir.1992).

The starting point for consideration of the pending motion is the Uniform Contribution Among Tort–Feasors Act, Md.Ann. Code, Art. 50, §§ 16–24. In particular, Art. 50, § 19, states in relevant part:

A release by the injured person of one joint tort-feasor, whether before or after judgment, does not discharge the other

---

**1.** Ford's additional arguments are: (1) that plaintiff has produced insufficient evidence to support his theories of liability, and (2) that plaintiff's breach of warranty claims are barred by the applicable statute of limitations.

tort-feasors unless the release so provides.

The two issues presented in this case under Art. 50, § 19 are: (1) whether Ford and Redd are "joint tortfeasors" within the meaning of § 19, and (2) whether the Sinelli–Redd release provided that Ford be discharged of liability.

■ On the record here, this Court concludes that Ford and Redd are "joint tortfeasors" within the meaning of Art. 50, § 19. The term "joint tortfeasors" is statutorily defined as "two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them." Md.Ann. Code, Art. 50, § 16. There is no doubt that Redd and Ford are jointly and severally liable for any injuries suffered by Sinelli as a result of the collision and the failure of his safety belt, and under Maryland law they are joint tortfeasors within the meaning of Art. 50, § 19. *Pemrock, Inc. v. Essco Co., Inc.*, 252 Md. 374, 249 A.2d 711 (1969); *Peters v. Butler*, 253 Md. 7, 251 A.2d 600 (1969); *Stefan v. Chrysler Corp.*, 472 F.Supp. 262 (D.Md.1979), *aff'd*, 622 F.2d 587 (1980); *White v. General Motors Corp.*, 541 F.Supp. 190 (D.Md.1982) (these cases are collectively referred to herein as "the *Pemrock* line of cases").

The recent case of *Morgan v. Cohen*, 309 Md. 304, 523 A.2d 1003 (1987) did not alter this basic principle in any way. Because of the importance of *Morgan* to this area of the law, a brief discussion of the facts of that case is in order. *Morgan* was a consolidated appeal of two cases with similar facts involving the same defendant, Dr. Cohen, a physician. In both cases, the plaintiff was involved in a roadway accident and was subsequently treated for injuries by Dr. Cohen. In both cases, the plaintiff initially brought suit against the allegedly negligent driver. Both of the initial suits were settled, and both plaintiffs entered into general release agreements with the at-fault drivers.[2] The issue to be decided by the Court in *Morgan* was whether these releases discharged Dr. Cohen from liability for his subsequent negligent treatment of the injuries sustained by the plaintiffs. Concluding that the releases were ambiguous, the Court of Appeals reversed the lower courts' granting of summary judgment in favor of Dr. Cohen and remanded the cases for trial. 309 Md. at 321, 523 A.2d 1003.

*Morgan* drew a number of distinctions between and among three varieties of joint tortfeasors. First, "true" joint tortfeasors, as they existed at common law, are those who act in concert to commit a single wrong. Second, "concurrent" tortfeasors are those who act separately but concur in their actions to cause a single harm at a single moment. Finally, a "subsequent" tortfeasor is one who, at some later point in time, enhances injuries first inflicted by an original tortfeasor. *Id.* at 311–315, 523 A.2d 1003. In *Morgan,* the Court declined to determine whether the term "joint tortfeasor" in Art. 50, § 19 included "subsequent" tortfeasors. However, the Court made it clear that Art. 50, § 19 was meant to cover at least "true" and "concurrent" tortfeasors. *Id.* at 315, 523 A.2d 1003. The *Morgan* Court clearly considered the *Pemrock* line of cases to be concurrent tortfeasor cases. *Id.* at 319, 523 A.2d 1003.

*Pemrock,* and the cases which followed it, are factually indistinguishable from the case at hand. In particular, *Stefan v. Chrysler Corp.*, 472 F.Supp. 262, and *White v. General Motors Corp.*, 541 F.Supp. 190, involve facts almost identical to those present in this case. Both *Stefan* and *White* involved products liability suits brought against automobile manufacturers as the result of a motor vehicle accident. In both cases, the plaintiffs had entered into general release agreements with the at-fault drivers involved in the collision. In both cases, the Court granted defendants' motion for summary judgment on the

---

**2.** The language of the release agreements at issue in *Morgan* was almost identical to the language of the Sinelli–Redd release. In particular, one of the releases at issue in *Morgan* released "all other persons" from all claims "resulting or to result from the accident." 309 Md. at 307, 523 A.2d 1003.

ground that the claims alleged were discharged by the release. As these cases were considered by *Morgan* to be concurrent tortfeasor cases, it cannot be doubted in this case that Ford and Redd are "concurrent" tortfeasors. Accordingly, they are "joint tortfeasors" within the meaning of Art. 50, § 19.

■ Inasmuch as Ford and Redd are joint tortfeasors for purposes of Art. 50, § 19, the next question is whether the Sinelli–Redd release discharged Ford from liability. The release discharges from future liability both the Redds and "any and all other persons, firms and corporations, whether herein named or referred to or not," from all liability for damage "resulting or to result from" the June 15, 1989 collision. Under § 19, this language unambiguously discharges Ford from all liability. Moreover, the language in question does not differ in any significant respect from that included in the releases at issue in the *Pemrock* line of cases. All of these cases hold that language of this sort releases a concurrent tortfeasor from liability, whether or not such a tortfeasor was a party to the release or was specifically mentioned in the release. *E.g., White*, 541 F.Supp. at 191. Inasmuch as the language of the Sinelli–Redd release is unambiguous, parole evidence regarding the intent of the parties to the Sinelli–Redd release need not be considered by the Court. *Id.*

Counsel for Sinelli has argued that *Morgan* requires this Court to consider evidence pertaining to the intent of the parties to the Sinelli–Redd release in order to determine whether they intended that Ford be discharged from liability. Counsel points to language in *Morgan* suggesting that the "resulting or to result from" language was ambiguous insofar as the liability was concerned of a subsequent negli-

gently treating physician. 309 Md. at 318, 523 A.2d 1003. However, *Morgan* specifically distinguished the applicability of this comment from the facts involved in the *Pemrock* line of cases. While *Morgan* involved a "subsequent" tortfeasor, these earlier cases all involved "single harms." *Id.* at 319, 523 A.2d 1003. In other words, the "resulting or to result from" language, while ambiguous insofar as subsequent tortfeasors are concerned, unambiguously referred to concurrent tortfeasors. *Morgan* did not overrule the conclusions reached by the courts in the *Pemrock* line of cases but merely refused to extend the reasoning of those decisions to cases involving subsequent tortfeasors. Accordingly, this Court concludes that *Morgan* does not require a determination that the Sinelli–Redd release was ambiguous. It is therefore not necessary to delve into the intent of the parties to that release in order to determine its applicability to defendant Ford.[3]

This would end the required analysis of defendant's motion were it not for Md.Ann. Code, Art. 79, § 13. That statute, which became effective on July 1, 1986, provides:

A release executed by a person who has sustained personal injuries does not discharge a subsequent tort-feasor who is not a party to the release and:

(1) Whose responsibility for the injured person's injuries is unknown at the time of the execution of the release; or

(2) Who is not specifically identified in the release.

■ Ford was not a party to the Redd–Sinelli release and is not specifically identified in the release. The question which therefore arises is whether Ford is a "subsequent tortfeasor" within the meaning of Art. 79, § 13. If so, Ford would not under

---

3. Sinelli also contends that *Welsh v. Gerber Products, Inc.*, 315 Md. 510, 555 A.2d 486 (1989) requires this Court to consider parole evidence of the intent of the parties to the Sinelli–Redd release. *Welsh* held that a consent judgment could not be used as non-mutual, defensive collateral estoppel on the issue of damages beyond the extent intended by the parties to the consent judgment. The plaintiff in *Welsh* had previously entered into a consent judgment with one joint tort-feasor, while at the same time specifically reserving his right to proceed against other joint tortfeasors or insurers. *Welsh* merely held that this explicit and specific reservation of right should be honored. In the present case, Sinelli made no such specific reservation of right, but rather entered into a general release. *Welsh* does not require this Court to look beyond the unambiguous language of the Sinelli–Redd release.

this statute be discharged from liability by the release. The term "subsequent tortfeasor" is not statutorily defined for purposes of Art. 79, § 13. Nor have the Maryland courts interpreted the meaning of this particular term in that statute in any reported decision. The Court of Appeals of Maryland specifically declined to construe Art. 79, § 13 in *Morgan*, 309 Md. at 309–310, 523 A.2d 1003, and all of the other pertinent Maryland cases were decided prior to the enactment of this statute.

In *Auer v. Kawasaki Motors Corp.*, 830 F.2d 535 (4th Cir.1987), *cert. denied*, 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 236 (1988), the United States Court of Appeals for the Fourth Circuit interpreted Maryland law in a case in which the facts were similar to the facts of the present case. *Auer*, while driving a motorcycle manufactured by Kawasaki, collided with a garbage truck owned by Browning–Ferris Industries ("BFI"). *Auer* settled with BFI and signed a release discharging BFI "and all other persons, firms and corporations who might be liable of and from any and all actions ... on account of, or in any way growing out of [the collision]." Kawasaki, who was then defending a products liability suit brought by *Auer*, moved for summary judgment on the basis of the release. The Fourth Circuit concluded that the release unambiguously discharged Kawasaki and that parol evidence concerning the intent of the parties to the release was inadmissible. *Id.* at 539. However, without further discussion or the citation of any Maryland cases, the Court noted that "[t]he rule was changed by statute effective July 1, 1986. *See* Md.Ann.Code art. 79, § 13." *Id.* The implication of this statement is that the Fourth Circuit would have considered Kawasaki to be a "subsequent tortfeasor" for purposes of Art. 79, § 13. However, the brief statement in *Auer* regarding Art. 79, § 13 was clearly *dicta*, inasmuch as that statute was in no way implicated by the facts of *Auer*.

This Court concludes that, even considering the *Auer dicta*, Ford cannot in this case be considered a "subsequent tortfeasor" for purposes of Art. 79, § 13. As *Morgan* indicates, the term "subsequent

tortfeasor" has not been considered by the Maryland courts to include an automobile manufacturer like Ford. Rather, such a manufacturer is a "concurrent tortfeasor," a term used by the Court of Appeals of Maryland even after the enactment of Art. 79, § 13. *Morgan*, 309 Md. at 319, 523 A.2d 1003. In no Maryland case has an automobile manufacturer, allegedly liable as a result of a motor vehicle collision, ever been referred to as a "subsequent tortfeasor."

Were this Court to determine in this case that Ford was a "subsequent tortfeasor," it would have to conclude that Art. 79, § 13 overruled the well established *Pemrock* line of cases. However, there is no indication in the legislative history or otherwise that the Maryland legislature intended to overrule these cases or to include automobile manufacturers within the definition of "subsequent tortfeasor" for purposes of Art. 79, § 13. The committee report accompanying the bill stated that "the following scenario illustrates the purpose of this bill." The scenario was as follows:

> A is injured in a car accident caused by B's negligence. A is treated for injuries by Dr. C. A settles her case against B and gives B a general release. A subsequently discovers that Dr. C has committed malpractice in treating her original injuries and that the malpractice caused further or different injuries. Assume that Dr. C's malpractice could not have been discovered with due diligence prior to releasing B. A judgment will be sought on the grounds that the release given to B bars the suit against Dr. C. The Motion for Summary Judgment is granted and A is out of court and left without a remedy. *This bill is designed to prevent this result.* (emphasis added)

Senate Bill 891, *Summary of Committee Report*, General Assembly of Maryland of 1986 (Senate Judicial Proceedings Committee). This illustration indicates that the Maryland legislature, in enacting this statute, was concerned with subsequent negligent treatment by a physician. In using the term "subsequent tortfeasor," the Maryland legislature chose language which

**674**

had previously been used to describe such physicians. Nothing in the legislative history suggests that the Maryland legislature intended to expand the meaning of that term, nor to overrule the *Pemrock* line of cases. Accordingly, this Court concludes that Art. 79, § 13 did not overrule the *Pemrock* line of cases, and that in this case Ford is not a "subsequent tortfeasor" within the meaning of this statute.

### III

*Conclusion*

The Sinelli–Redd release unambiguously discharged Ford from liability resulting from the June 15, 1989 collision. This Court therefore will not consider parole evidence of any contrary intent. Md.Ann. Code, Art. 79, § 13 does not alter this result. Accordingly, for all of the reasons stated herein, the Court will grant defendant's motion for summary judgment. An appropriate order will be entered by the Court.