Gordon J. WELLS, and Loretta C. Wells, Appellants,

v.

Walter C. RAU, Appellee.

No. 20750.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 11, 1967.

Decided April 1, 1968.

Mr. Joseph E. Casey, Washington, D. C., with whom Mr. Thomas B. Scott, Washington D. C., was on the brief, for appellants.

Mr. Carl L. Taylor, Washington, D. C., with whom Mr. Frank F. Roberson, Washington, D. C., was on the brief, for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge, WRIGHT and McGOWAN, Circuit Judges.

McGOWAN, Circuit Judge:

Appellants, husband and wife, sued in the District Court to recover their respective damages allegedly suf-

fered by reason of an auto accident in which the husband was involved. Three requests for relief were contained in the complaint: (1) Damages for the husband's physical injuries, (2) damages for the wife's loss of consortium, and (3) the setting aside of a general release executed by the husband. There was a trial to the court of the last issue out of the presence of the jury. Sustaining the release, the court thereupon dismissed the husband's claim. The trial of the wife's claim eventuated in a jury verdict of no liability. We leave the latter judgment undisturbed.[1] We disagree, however, with the disposition of the release issue; and, accordingly, we reverse the dismissal of the husband's cause of action.

## I

Appellant-husband, while driving to work on May 26, 1963, was run into by appellee at a street corner in Washington. Appellant's car was damaged; and he testified at the trial that the impact of the collision upon his body had been substantial. The police, upon arrival at the scene, asked appellant if he had been physically injured, and appellant said only that he had bumped his knees. The police discussed with appellant (a member of the White House police detail) whether he should go to the police clinic for a physical check. He indicated that he would do so, but changed his mind later because he thought it unnecessary. Instead, he went home rather than on to work, which he did not resume until May 29.

Sometime between May 26 and May 29, appellant called appellee's insurer to see if the accident had been reported. He inquired as to what would be required by way of estimates of the needed repairs to his car. He said nothing about physical injuries because, as he testified, "I had no feeling about any personal injury at that time." On June 22, 1963, a representative of the insurer came to appellant's home to discuss his claim. Appellant presented a bill for repairs in the amount of $367.89. He was then asked if he had been injured in the accident, and appellant replied by mentioning only his bruised knees. The insurer's representative then said: "Well, let's give you a hundred dollars for your knees," to which appellant responded that "this was fine with me." The interview was closed with appellant's signing a general release and receiving a payment of $467.89.

On July 9, 1963, appellant had severe pains in his neck and shoulder. He went to a doctor on July 12, was hospitalized that day, and eventually underwent surgery for the removal of a ruptured disc in his neck. Although there was conflicting testimony as to whether the ruptured disc was caused by the accident in suit, this issue would have been resolved by the jury if appellant's claim had been permitted to get to it. It did not enter into the court's ruling to dismiss that claim because of the release.

## II

■ The dismissal ruling, made at the close of appellant's entire case,[2] followed

---

1. Although it is now asserted that the verdict was not supported adequately by the evidence, no motion was made at the trial by appellant-wife for a directed verdict or for judgment notwithstanding the verdict. See FED.R.CIV.P. 50. The only other error urged upon appeal is that the trial court should not have informed the jury that it had dismissed the husband's claim because of a release, at least without also disclosing to the jury the amount paid for the release. This question is also raised for the first time on appeal, there having been no objection at trial, no request that the judge's comment

be enlarged by a statement of the amount, and no motion for a new trial (see FED.R.CIV.P. 59). Under these circumstances we do not think reversal is in order. FED.R.CIV.P. 61.

2. The procedure prescribed at the outset by the trial judge was that appellant-husband was to start presenting his case to the jury. When that point came when he wished to offer evidence relevant to his attack upon the release, the jury would be excused. This was the way it happened, with appellant's evidence being resumed before the jury until the comple-

the reasoning of the District Court's opinion in Randolph v. Ottenstein, 238 F. Supp. 1011 (D.D.C.1965), noting incidentally that this court had affirmed the judgment in that case upon appeal. Randolph v. Ottenstein, 122 U.S.App.D.C. 414, 355 F.2d 839 (1965). It was the trial court's view that, as stated by the District Court in *Randolph*, general releases may be set aside only for mutual mistake of fact; and that, as in *Randolph*, only appellant can be regarded as laboring under a mistake. Thus, so it was said, the sole mistake in legal contemplation was unilateral in nature, and contracts are not rescindable for that reason. The trial court also found—quite correctly, we think—that there was no evidence of purposeful misrepresentation or overreaching in the release transaction which would have provided an alternative basis for setting the release aside.

It was this absence of improper inducement to which we expressly alluded in our affirmance in *Randolph;* and we were eloquently silent about the theory of unilateral mistake enunciated by the District Court in that case. We stressed these special facts in *Randolph*: The claimant was an experienced attorney who threatened the insurance carrier with immediate suit if it insisted upon a medical examination before paying his auto repair bill. The claimant buttressed this position by representing that he had been examined and x-rayed by his own doctor, who was willing to provide a written statement of what he had found. Under the pressure for settlement so exerted, the insurer accepted this statement in lieu of its own examination. It showed no serious injury; a release was executed; and payments were made of $399.48, including $150 for "plaintiff's injuries." Within three weeks the claimant suffered not a new affliction but an aggravation of a long-time arthritic condition which resulted in surgery. On these facts we not unnaturally felt no compulsion to disturb the result in the trial court of denying cancellation of the release.

■ *Randolph*, so viewed, hardly governs this case. Nor are we cited to any other authorities in this jurisdiction compelling affirmance. It is not a new idea that these release cases, involving as they do the invocation of the equitable powers of the court to avert injustice, are heavily affected by their own facts and do not lend themselves neatly to generalized legal rules. See, generally, Keefe, *Validity of Releases Executed under Mistake of Fact*, 14 FORDHAM L.REV. 135 (1945). In any event, we are not about to promulgate a broad principle to the effect that, where the parties bargain explicitly and solely with respect to a single known injury, the existence of a different and unknown injury is to be regarded as a mistake attributable only to the releasor.

We think that the facts of this case fit most closely within the following formulation by Professor Corbin (6 Contracts 181–182 (1962)):

> If a claim is made for damages for an injury, a compromise settlement is ordinarily not made voidable for mistake because the injury was greater and lasted longer than was expected at the time of the settlement, if the parties knew or had reason to know that the extent of the injury was uncertain and that was the very reason for the compromise. But if the settlement was made in contemplation of one kind of injury, minor in character such as a flesh bruise, when in fact but unknown to the parties, there was a very different injury such as a broken back, the settlement or release may be voidable for mistake.

The evidence with respect to the conversations between the adjuster and appellant at the time of the execution of the release suggests to us that, in Cor-

tion of his entire case. Thereupon the judge excused the jury once more, heard counsel on the release question, and made his ruling that the release barred appellant's cause of action. The jury was again brought in, and the trial proceeded upon appellant-wife's claim.

bin's phrase, "the settlement was made in contemplation of one kind of injury," *i. e.*, the bruised knees. It did not in terms relate to any other kind of injury, nor was there any explicit and conscious bargaining for the foreclosure for all time of claims in respect of any possible injuries then unknown. That consequence can be supplied here only by reference to the broad boilerplate of the release form.

▮ Where, as here, the releasee says explicitly what it is paying for, and at least does not indicate that it purports to be buying more, we think the bargain so made is the one to be enforced, as distinct from the unbargained one encompassed in the sweeping language of the legal draftsman. *Randolph* does not disable us from so holding in this case, nor are there any other decisions in this Circuit which prevent us from regarding Professor Corbin's rule as operative in this jurisdiction in the same way that the Second Circuit has found it to be effective in New York. See Evans v. S. J. Groves & Sons Co., 315 F.2d 335 (2d Cir. 1963).

▮ The record here does not exhibit, to use Judge Friendly's phrase in *Evans*, "a considered decision to arrive at a fair liquidation of all injuries, including those which were unsuspected." 315 F. 2d at 339. Where the evidence discloses explicit bargaining about the release of unknown injuries, as distinct from bargaining limited as here to the one that was known, it might be said that there was such a "considered decision." And, assuming its establishment, the Corbin rule would not appear by its terms ("may be voidable for mistake") to compel the setting aside of the resulting bargain. We take the record, however, as it is in the lawsuit before us.

The judgment of dismissal of appellant-husband's cause of action is reversed, and the case is remanded for further proceedings not inconsistent herewith.

It is so ordered.