Stephen Paul LAMPHIER, et
al., Appellants,

v.

WASHINGTON HOSPITAL
CENTER, Appellee.

No. 85–182.

District of Columbia Court of Appeals.

Argued Feb. 13, 1986.
Decided April 21, 1987.

William O. Lockwood, Rockville, Md., for appellants.

James P. Schaller, Washington, D.C., for appellee.

Before PRYOR, Chief Judge, and NEBEKER and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

Maryland resident Stephen Lamphier was seriously injured in a car accident on North Capitol Street in the District of Columbia. Lamphier and his wife (hereinafter Lamphier) accepted a settlement from Ronald Gordon, the other driver involved in the accident, and then sued the Washington Hospital Center (WHC) for negligent treatment of his injuries. The Superior Court granted summary judgment for WHC. Lamphier appeals. The question is whether as a matter of law, the settlement and release between Lamphier and Gordon bars Lamphier from suing WHC for malpractice. We conclude that it does not, and therefore reverse the summary judgment.

## I. *The Facts*

Lamphier's car accident with Gordon occurred on November 10, 1979. Lamphier was rushed to WHC for treatment of his injuries, and remained hospitalized there until November 30, 1979. Lamphier's injuries included a ruptured spleen, broken ribs, and skull fractures. He also developed a permanent blood clot in his right leg, which causes pain and swelling and makes it difficult for him to walk.

In April 1980, Lamphier and his wife sued Gordon in the Circuit Court for Prince George's County, Maryland, seeking damages for Lamphier's injuries and his wife's loss of consortium. The parties decided to settle the claims, and on November 5, 1981, the Lamphiers signed a form release which provided in relevant part:

We, STEPHEN PAUL LAMPHIER AND CAROLYN LAMPHIER ... in consideration for the sum of $27,500 ... hereby remise, release, and forever discharge RONALD LESTER GORDON AND GOVERNMENT EMPLOYEES INSURANCE COMPANY, releasee(s), successors and assigns, and/or his, her or their associates, heirs, executors and adminis-

trators, and all other persons, firms or corporations of and from any and every claim, demand, right or cause of action of whatever kind or nature, on account of or in any way growing out of any and all personal injuries and consequences thereof, including, but not limited to, all causes of action preserved by the wrongful death statute applicable, any loss of services and consortium, any injuries which may exist but which at this time are unknown and unanticipated and which may develop at some time in the future, all unforeseen developments arising from known injuries, and any and all property damage resulting or to result from an accident that occurred on or about the 10th day of November 1979, at or near North Capitol Street, Washington, D.C., and especially all liability arising out of said accident including, but not limited to, all liability for contribution and/or indemnity....

Approximately one year after signing the release with Gordon, Lamphier filed suit against WHC in the District of Columbia Superior Court, alleging that WHC caused the permanent blood clot in his leg through negligent treatment of his accident injuries.[1] WHC moved for summary judgment, arguing that the general release executed between Lamphier and Gordon also released WHC from liability for any claims arising out of the November 10 accident. WHC also argued that the malpractice claim was barred because Lamphier had already recovered from Gordon for all of his accident-related injuries (including the permanent blood clot in his leg) and was entitled only to a "single satisfaction" for his damages.

Lamphier argued in opposition to summary judgment that his permanent blood clot was a separate injury independently caused by WHC's negligence, and that the release to Gordon was not intended to release WHC from liability for its malpractice.

1. Lamphier specifically alleged that WHC caused the permanent blood clot through negligent performance of an arteriogram. For purposes of this appeal, WHC concedes that this was "an altogether separate injury" from those sustained in the automobile accident.

The trial court initially declined to grant summary judgment for WHC, noting that there remained a disputed factual issue as to whether Lamphier had suffered a separate malpractice injury during treatment of his accident injuries. WHC moved for reconsideration. WHC conceded that Lamphier's permanent blood clot "clearly resulted" from the treatment he received at WHC, but argued that Lamphier had already "fully recovered" from Gordon for "all injuries, including those separate, subsequent injuries, allegedly suffered at the hands of (WHC)." Upon reconsideration, the trial court granted summary judgment for WHC, concluding that Lamphier's recovery in satisfaction of his Maryland claim against Gordon "must be viewed as the single recovery allowed" for his injuries.

## II. *Applicable Law*

■ As will become apparent later in this opinion, the law of Maryland and the District of Columbia is not necessarily the same as applied to tortfeasors of the type involved here. To determine whether D.C. or Maryland law should govern the effect of the release on the malpractice claim, we balance the competing interests of the two jurisdictions, and apply the law of the jurisdiction with the more "substantial interest" in resolution of the issue. *See, e.g., Kaiser-Georgetown Community Health Plan, Inc. v. Stutsman*, 491 A.2d 502, 509 (D.C. 1985); *McCrossin v. Hicks Chevrolet, Inc.*, 248 A.2d 917, 921 (D.C.1969); *Myers v. Gaither*, 232 A.2d 577, 583 (D.C.1967). We first consider the connection between each jurisdiction and the case at hand, then analyze the relative importance of those contacts in light of the legal issues presented. *Myers v. Gaither, supra*, 232 A.2d at 583. This analysis requires us to evaluate the governmental policies underlying the conflicting laws to determine which jurisdiction's policy would be most advanced by having its law applied to the case under review. *Kaiser-Georgetown, supra*, 491 A.2d at 509, citing *Williams v. Williams*, 390 A.2d 4, 5–6 (D.C.1978).

The release was signed in Maryland between two Maryland residents in settlement of litigation brought in Maryland. However, in the case now before us, the release is raised as an affirmative defense to a malpractice claim made in a District of Columbia court against a District health care corporation for an injury that occurred in the District. "Choice of law involves examination not simply of various state interests generally, but of their interests regarding the various distinct issues to be adjudicated." *Estrada v. Potomac Electric Power Co.*, 488 A.2d 1359, 1361 (D.C. 1985). We must therefore balance the relative interests of Maryland and the District of Columbia in determining whether the release between Lamphier and Gordon is a valid defense to the malpractice claim against WHC.

We conclude that the District of Columbia has the more substantial interest in applying its own law to interpret the release in the context of this case. The District has a strong and recognized interest in determining the liability of District health care corporations for negligence attributable to them that occurs within the District. *Kaiser-Georgetown, supra*, 491 A.2d at 509–10. By contrast, Maryland has little if any interest in applying its general release rule to limit the liability of a District of Columbia corporation which does not do business in Maryland, or to rights and liabilities of tortfeasors (including rights inter se) where the relevant tortious actions all occurred in the District. Since the public policy interests of Maryland and the District do not truly conflict under the circumstances presented here, and since the District has a substantial interest in applying its own law, we conclude that District law should govern the effect of the release as an affirmative defense to Lamphier's malpractice claim against WHC.

### III.

The issue presented here is whether the settlement and release between Lamphier and Gordon with respect to injuries resulting from the car accident bars Lamphier from suing WHC for negligent treatment of those injuries. Summary judgment is appropriate only if there are no material facts at issue and it is clear WHC is entitled to judgment as a matter of law. *See*,

*e.g., Nader v. deToledano*, 408 A.2d 31, 41–42 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980); Super.Ct.Civ.R. 56(c). WHC's contention, in essence, is that the release as a matter of law is effective with respect not only to Gordon but also to WHC. Its argument is based upon two related propositions: first, that by its terms, the release executed by the Lamphiers covers WHC as well as Gordon and second, that as a matter of law, the "single satisfaction rule" here bars plaintiffs from recovering from WHC after having recovered against Gordon through the settlement.

### A. Release of WHC.

 "A release is a form of contract and normal rules of contract interpretation apply. The parties' intentions are paramount to construction of the instrument." *Bolling Federal Credit Union v. Cumis Insurance Society, Inc.*, 475 A.2d 382, 385 (D.C.1984) (citations omitted). If the document is facially unambiguous, its language should be relied upon as proving that intent; if the document is ambiguous, extrinsic evidence of the parties' subjective intent may be resorted to. *Davis v. Davis*, 471 A.2d 1008, 1009 (D.C.1984). Extrinsic evidence may be considered also to determine the circumstances surrounding the making of the agreement, so that it may be ascertained what a reasonable person in the position of the parties would have thought the words meant. *1010 Potomac Assoc. v. Grocery Manufacturers*, 485 A.2d 199, 205–06 (D.C.1984) (citations omitted).

 We cannot say that the document before us is plain on its face in releasing WHC, particularly when the surrounding circumstances are taken into account. We are not dealing here with a classic case of joint tortfeasors, each of whom is liable for the full amount of the injuries. Rather, as WHC acknowledges, we are dealing with a situation where two distinct injuries are involved, occurring at different times, the second of which clearly was inflicted by an entity other than the settling tortfeasor. *Cf. Kyte v. McMillion*, 256 Md. 85, 259 A.2d 532 (1969) (auto accident caused plaintiff's broken bones; later, hospital transfuses improper blood).[2] Thus, we do not deal with a release which it is claimed releases not only the named releasees but all others who share identical liability. *Cf. Gagnon v. Lakes Region General Hospital*, 123 N.H. 760, 465 A.2d 1221 (1983) (release of original tortfeasor and "any and all other persons, firms, and corporations" does not, as matter of law, release maltreating physician, who is not a joint tortfeasor but rather a "successive or independent" wrongdoer).

Turning to the language of the release itself, the phrase describing the entities released reads: the Lamphiers "hereby remise, release, and forever discharge RONALD LESTER GORDON AND GOVERNMENT EMPLOYEES INSURANCE COMPANY releasee(s), successors and assigns, and/or his, her or their associates, heirs, executors and administrators, and all other persons, firms or corporations of and from any claim . . . ." (All the language quoted is printed in the form except for the names of the specific releasees in capital letters, which were typed in.) This lengthy string of specific successors in interest, followed by the phrase "all other

---

**2.** The liability of Gordon for the malpractice of WHC would be based upon the proposition that a tortfeasor is liable for any negligence that may occur in the medical treatment of injuries resulting from the accident, for which there is support in the case law, especially where the malpractice aggravates the original injury. *See* W. KEETON, PROSSER AND KEETON ON TORTS § 44, at 309–10 (5th ed. 1984); RESTATEMENT (SECOND) OF TORTS § 457 comment a (1977); Annotation, 100 A.L.R.2d 808 (1965). We need not determine here whether the injuries caused by WHC were sufficiently separate and distinct so as not to render Gordon liable for them. *See Kyte v.*

*McMillion, supra,* 259 A.2d at 539–41 KEETON, *supra,* at 310 n. 86. In any event, WHC would not seem to be liable for anything beyond the damages resulting from its own malpractice, unlike the classic joint tortfeasor situation where each is liable for the whole damages. KEETON, *supra,* at 352; RESTATEMENT (SECOND) OF TORTS § 433A comment c (1977). "[I]t would defy reason to hold the physician liable for injuries caused by the original wrongdoer which were not the consequences of his own carelessness . . . ." *Kyte v. McMillion, supra,* 259 A.2d at 541, quoting from *Derby v. Prewitt*, 12 N.Y.2d 100, 236 N.Y.S.2d 953, 187 N.E.2d 556 (1962).

persons, firms or corporations," possibly leaves open the question whether the latter phrase is applicable only to successors in interest of an unnamed sort, rather than any and all other persons of whatever description. Second, and more tellingly, beneath the blank space in which were typed the names of Gordon and the insurance company appears this instruction in parentheses: "(Here *insert full names of Persons, Corporations, or Partnerships to be released)*". This instruction adds credence to the possibility that only successors in interest were intended to be released.[3]

WHC urges us to adopt the rule of construction followed by Maryland courts, whereby a general reference to third parties in a release is broadly read to bar suits against other entities involved in the occurrence. *See Ralkey v. Minnesota Mining & Mfg. Co.,* 63 Md.App. 515, 492 A.2d 1358, 1363 (1985) and cases cited. This broad reading of a general release, it is explained, assures that the settling tortfeasor is not left open to claims for contribution initiated by nonsettling tortfeasors, as is possible

under the Maryland statute.[4] *See White v. General Motors Corp.,* 541 F.Supp. 190, 192 (D.Md.1982).

However, our law with respect to contributions among tortfeasors, developed through cases rather than a statute, has taken a different course, to which the Maryland rationale does not easily apply. Briefly put, where contribution would otherwise be called for, a credit is applied against the amount of any judgment against a nonsettling tortfeasor equal to the share of the judgment that should be borne by the settling tortfeasor.[5] Thus, the injured party in settling with one tortfeasor effectively bears the burden that otherwise would fall upon the settling tortfeasor through the obligation to make contribution, and the policy of according protective finality to out-of-court settlements is preserved. *Otis Elevator Company v. Henderson,* 514 A.2d 784, 786 (D.C.1986); *Martello v. Hawley,* 112 U.S.App.D.C. 129, 300 F.2d 721 (1962); *McKenna v. Austin,* 77 U.S.App.D.C. 228, 134 F.2d 659 (1943).[6]

**3.** *Cf. Wells v. Rau,* 129 U.S.App.D.C. 253, 256, 393 F.2d 362, 365 (1968) ("broad boilerplate" language of a general release does not bar releasor from suing releasee for unknown injuries not explicitly listed in the release and not consciously bargained for).

**4.** Under Maryland's version of the Uniform Contribution Among Tort-Feasors Act, Md.Ann. Code, art. 50, § 20, "a release by the injured person of one joint tort-feasor does not relieve him from liability to make contribution to another joint tort-feasor unless the release is given before the right of the other tort-feasor to secure a money judgment for contribution has accrued, and provides for a reduction, to the extent of the pro rata share of the released tort-feasor, of the injured person's damages recoverable against all other tort-feasors." *Cf. id.* § 19; *Martinez v. Lopez,* 300 Md. 91, 476 A.2d 197 (1984). There may also be involved a concern of a settling tortfeasor who pays more than his share to retain a right of contribution from a nonsettling joint tortfeasor, *see* Md.Ann.Code, art. 50, § 17(c); *O'Keefe v. Baltimore Transit Co.,* 201 Md. 345, 94 A.2d 26 (1953), although this concern may be more theoretical than real. *Morrison v. General Motors Corp.,* 428 F.2d 952, 954 (5th Cir.1970). In the instant case, even this Maryland rationale would not support a broad reading of the release, since presumably WHC would have no right of contribution over against Gordon for damages resulting solely from WHC's negligence—the probable maxi-

mum exposure of WHC in any event. *See* note 2, *supra; State ex rel. Baldwin v. Gaertner,* 613 S.W.2d 638, 641 (Mo.1981) (en banc) ("inconceivable" that original tortfeasor is liable for contribution to treating physician toward damages solely attributable to subsequent medical malpractice).

**5.** The liability of the settling tortfeasor to the injured party must be judicially established. *Otis Elevator Co. v. Henderson,* 514 A.2d 784, 786 (D.C.1986).

**6.** RESTATEMENT (SECOND) OF TORTS at § 886A, comment m, notes that there are three possible ways to deal with the problem under discussion. One is to credit the settlement amount against any judgment obtained against the nonsettling tortfeasor, but the right to contribution against the settling tortfeasor continues to exist. This was the solution contained in the 1939 version of the Uniform Contribution Among Tort-Feasors Act; adopted by Maryland. A second solution is to extinguish all rights of contribution against a settling tortfeasor. The 1955 revised version of the Uniform Act adopted this solution. The third solution is that "the money paid extinguishes any claim that the injured party has against the released tortfeasor and also diminishes the claim that the injured party has against the other tortfeasors by the amount of the equitable share of the obligation of the released tortfeasor." Our case law comes closest to this third solution.

In sum, applying our rules of contract interpretation,[7] we think a contested issue of fact exists as to the meaning and effect of the release, and that the trial court properly refused to enter summary judgment on the basis that the document on its face released WHC.

### B. "Single Satisfaction Rule"

■ WHC's second argument, and the one relied on by the court below, is that plaintiff's settlement with Gordon constituted, in effect, full compensation for all injuries arising out of the accident, including those resulting from subsequent negligence of the hospital, and hence, under what it terms the "single satisfaction rule," plaintiff cannot recover again. In support of this argument, WHC invokes the undisputed proposition that generally an injured party may not recover doubly, in whole or in part, for the same injury; otherwise, he would be unjustly enriched. For example, we are cited to the leading case of *McKenna v. Austin*, in which the court wrote:

> It is no defense for wrongdoers that others aided in causing the harm. Each is responsible for the whole. But that does not mean that the injured person may have more than full satisfaction, except as punitive damages. He has no right to make profit from his harm because several share in causing it. Accordingly, when one makes full reparation for all the loss, the others are discharged from liability to the injured person. . . .

77 U.S.App.D.C. at 233, 134 F.2d at 664.[8]

This same principle is the source of the requirement that in an action by an injured party against one tortfeasor, at the least a credit must normally be given against any judgment in an amount equal to any settlement proceeds received from another joint tortfeasor; otherwise the injured party would be unjustly enriched.[9]

However, the issue still remains whether the $27,500 provided for in the settlement with Gordon is in fact "full satisfaction" within the meaning of the rule. WHC is in substance arguing that in accepting the $27,500,[10] Lamphier did so in full satisfaction of all his injuries. In support, WHC asserts that at the time of the settlement Lamphier was aware of the additional injury caused by WHC's negligence and sought recovery for that injury from Gordon.[11]

---

**7.** We should note that the Maryland rule requires that the words of general release be "plain and unambiguous." *Ralkey v. Minnesota Mining & Mfg. Co., supra,* 492 A.2d at 1366. The Maryland cases appear to involve releases more unambiguous in language than the release before us. For example, in *Ralkey,* the release was of "ROLAND CAVANAUGH, M.D., his or their successors and assigns, and all other persons, firms or corporations who are or might be liable," thus omitting any lengthy recitation of various types of successors in interest and containing the additional phrase "who are or might be liable." In our own case of *Hodges v. United States Fidelity & Guaranty Co.,* 91 A.2d 473, 476 (D.C.1952), we were interpreting a Maryland release of the "Payer [released party] and all other persons, firms, and corporations, both known and unknown." None of the other release forms appear to have contained the instruction in parentheses contained the Gordon release form. Thus, it is possible that a Maryland court would find the language of the release form before us not to be conclusive, despite its acknowledged strictness of approach. *Cf. Stefan v. Chrysler Corp.,* 472 F.Supp. 262 (D.Md.1979), *aff'd without published opinion,* 622 F.2d 587 (4th Cir.1980) (recognizing strictness of Maryland rule in a diversity case).

**8.** We have applied this general principle in our case law. *See, e.g., Reid v. District of Columbia,* 391 A.2d 776, 777 (D.C.1978) ("An injured person may not have more than full satisfaction. He or she has no right to make a profit from the injury. Therefore, evidence is admissible to show that the plaintiff has already been reimbursed, in whole or in part, for the injury. The purpose of the rule is to prevent unjust enrichment.")

**9.** *Otis Elevator Co. v. Henderson,* 514 A.2d 784, 786 (D.C.1986). Whether such a credit must be applied against any recovery Lamphier might obtain against WHC is an issue we do not reach. It is complicated by the fact that WHC is not a classic joint tortfeasor. *See* note 2, *supra.*

**10.** Lamphier argues that to date, he has not been fully paid the $27,500 and thus there has been no "full satisfaction" even under WHC's theory. We need not reach this issue.

**11.** To the extent that WHC is arguing that the release of Gordon amounts in law to a satisfaction of his entire claim, as would be the case if, for example, Lamphier obtained a judgment against Gordon for all his injuries which was fully satisfied, we think it plain that the decision in *McKenna v. Austin,* in the language quoted below, has foreclosed any such result. *Cf. Kyte v. McMillion, supra,* and cases cited.

But the fact of knowledge cannot be decisive. Settlements will often occur with one joint tortfeasor for far less than the total amount of the claimed injury, with the settling injured party's having full knowledge of the extent of the injuries. The question must be, did the settlement and release with Gordon amount to "full reparation for all the loss," including the injury caused by WHC.[12]

The manner in which this issue is to be resolved was prescribed in *McKenna v. Austin:*

> The difficulty is in how it shall be determined whether full indemnity has been received. This will vary with circumstances. Facts and intentions, rather than presumptions from the mere fact of settlement, should control. When damage to property is measureable with fair accuracy and has reasonable relation to the damage shown, the amount paid may be conclusive. With personal and other injuries less readily reduced to cash value, the difficulty may be greater. Ordinarily, the claimant will not secure complete indemnity from one or less than all, unless the others are judgment proof. Such a settlement usually would not be advantageous to the settling wrongdoer. The presumption of fact therefore generally would be against full satisfaction and discharge. It would seem conclusive when rights against those not released are reserved explicitly or intention otherwise appears to keep these claims alive. Whether the settlement is made and accepted as full satisfaction or merely as the best obtainable compromise for the settler's liability is the crucial issue, and ordinarily one of fact. If however, the agreement's terms leave no room for doubt, the decision should be made as a matter of law.

*Id.,* 77 U.S.App.D.C. at 233, 134 F.2d at 664.

We are thus brought back to the terms of the release. In reality, on the facts presented here, the "single satisfaction" issue is close to the "intent to release unnamed parties" issue in another guise. For essentially the reasons that we previously indicated proscribe any conclusive effect to a release of all parties by the wording of the agreement, we hold that whether the $27,500 was taken in full settlement is here, as "ordinarily," one of disputed fact.

In sum, this case is governed by the doctrines of law that we summarized in a case less than half a decade past:

> In *McKenna,* the court held that the effect of a release of a joint tortfeasor was ordinarily a question of fact dependent on two inquiries: (1) did the plaintiff intend to release all wrongdoers or only the particular party named in the release; and (2) did the amount settled for fully compensate the plaintiff, or was it taken merely as the best obtainable compromise for the settler's liability. Only where the terms of the release leave no room for doubt should these decisions be made as a matter of law.

*Hill v. McDonald,* 442 A.2d 133, 138–39 (D.C.1982) (citations omitted).

The decision appealed from is reversed and the case remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

---

**12.** Perhaps more precisely, the issue is whether the $27,500 in fact compensated Lamphier fully for all his injuries and if not, whether nevertheless he received it intending that it serve as full satisfaction. "There is a genuine distinction between a satisfaction and a release. A satisfaction is an acceptance of full compensation for the injury; a release is a surrender of the cause of action, which may be gratuitous, or given for inadequate consideration ... *Where there has been such full satisfaction, or where it is agreed that the amount paid under the release is so received,* no claim should remain as to any other tortfeasor; but these are questions of fact, and normally to be determined by the jury, where the amount of the claim is unliquidated." W. KEETON, PROSSER AND KEETON ON TORTS § 49, at 332, 335 (5th ed. 1984) (emphasis added).