Willie **NOONAN,** Appellant,

v.

Leo A. **WILLIAMS,** Appellee.

No. 95–CV–240.

District of Columbia Court of Appeals.

Argued Nov. 16, 1995.
Decided Dec. 12, 1996.

Stacy A. Feuer, Washington, DC, with whom Keith W. Donahoe was on the brief, Washington, DC, for appellant.

Stephen A. Horvath, with whom Dawn E. Boyce was on the brief, for appellee.

Before TERRY, KING, and RUIZ, Associate Judges.

TERRY, Associate Judge:

Our task in this case is to construe a general release from liability that appellant signed after an automobile accident in which he was injured. We must decide whether an alleged joint tortfeasor (appellee Williams) is discharged from liability when the injured party (appellant Noonan) executes a general release that purports to release not only two other named tortfeasors, but "all other" potentially liable persons. The trial court answered this question in the affirmative and granted summary judgment for Williams. We reverse.

## I. THE FACTS

A taxicab and a private automobile collided at the corner of North Capitol and Channing Streets, N.W., on December 15, 1992. Noonan was a passenger in the taxicab, which was owned by Capitol Cab Cooperative Association, Inc. ("Capitol Cab"), and was driven by Hubert Jefferson. Williams was the driver of the other car. About five months later, Noonan executed a general release of Capitol Cab and Jefferson in exchange for a $25,000 settlement. In pertinent part, the release stated that Noonan agreed to

> release, remise, acquit and forever discharge the Capitol Cab Cooperative Association, Inc., a body corporate and Hubert Jefferson and his, her, their, or its agents, servants, employees, successors, heirs, executors, administrators and *all other persons*, firms, associations or partnerships, both known and unknown, of and from any and all claims, actions, causes of action, demands, rights, liabilities, damages, costs, loss of service, expenses and compensation of whatsoever kind or nature which the undersigned now has/have or which may hereafter accrue on account of or in any way growing out of any and all known and unknown, apparent and not apparent, foreseen and unforeseen bodily and personal injuries and property damage and the consequences thereof resulting or to result from the accident, casualty or event which occurred on or about the 15th day of December 1992, at or near No. Capitol & Channing St., N.W. [Emphasis added.]

The release was executed on a printed form, with blanks to be filled in. Jefferson's name, the date and location of the accident, and the amount of the settlement were typed in those blanks; everything else was pre-printed.

After signing the release, Noonan filed this suit against Williams, alleging that the accident was due to Williams' negligence and seeking damages in the amount of $100,000. Williams filed an answer and then a third-party complaint against Jefferson. Some time later, Williams filed a motion for summary judgment, arguing that the release of Jefferson and Capitol Cab had also released him from liability. In response, Noonan submitted three affidavits from himself, his

counsel at the time of the release, and counsel for Capitol Cab and Jefferson. According to Noonan, these affidavits clearly showed an intent by the contracting parties to release claims against Capitol Cab and Jefferson only.

Initially the trial court denied Williams' motion for summary judgment, stating that "genuine issues of material fact remain in dispute pertaining to the meaning of the release agreement." Williams filed a motion for reconsideration, arguing that the court had erroneously considered the affidavits submitted by Noonan in violation of the parol evidence rule, and that even if they were properly before the court, the affidavits did not identify any agreement to limit the scope of the release to the specifically named releasees. Noonan opposed the motion for reconsideration, asserting that the release was ambiguous on its face, and that the affidavits resolved the ambiguity by establishing that the intention of the parties was to resolve only Noonan's claims against Capitol Cab and Jefferson.

After reconsidering the matter, the court reversed its earlier position and granted summary judgment for Williams. In its order the court said:

> The language of the "Release of All Claims" agreement . . . clearly and unambiguously releases not only Third Party Defendant [Jefferson], but also "*all other persons* . . . from any and all claims . . . resulting from the accident . . . which occurred on or about the 15th day of December, 1992."

■ On appeal from the judgment against him, Noonan makes two arguments. First, he contends that the trial court's ruling that the release was clear and unambiguous in releasing all potentially liable persons is incorrect as a matter of law. Second, he maintains that the court erred in failing to consider extrinsic evidence in the form of affidavits showing the parties' intentions. We agree with Noonan's first contention. We also agree with his second contention that extrinsic evidence should have been considered to ascertain the parties' intent, but we find the affidavits inconclusive. We hold that a general release like the one signed by Noonan,

which provides for the release of "all other persons," discharges only those joint tortfeasors whom the contracting parties actually intended to be released. Because in this case there are material issues of fact regarding that intent, we reverse the grant of summary judgment.

## II. THE LAW OF RELEASES

### A. *The District of Columbia*

■ At common law, a release of one joint tortfeasor operated as a release of all joint tortfeasors. *See Kaplowitz v. Kay*, 63 App. D.C. 178, 179, 70 F.2d 782, 783 (1934). "The traditional rationale given for this rule was that where two or more tortfeasors acted in concert to cause an injury, the act of one became the act of all and a single cause of action, with each participant being liable for the entire loss sustained by the plaintiff." *Neves v. Potter*, 769 P.2d 1047, 1049 (Colo. 1989) (citation omitted). Over time, however, the harshness of the common law rule was widely criticized by courts and commentators "because it served as a trap for unknowing plaintiffs, barring them from suing additional tortfeasors and, in some cases, from obtaining full relief for their injuries." *Sims v. Honda Motor Co.*, 225 Conn. 401, 406–407, 623 A.2d 995, 998 (1993) (citations omitted). Thus in 1943 the District of Columbia abandoned the common law rule in *McKenna v. Austin*, 77 U.S.App. D.C. 228, 234, 134 F.2d 659, 665 (1943), in which the court held that "[p]artial satisfaction taken in compromise and release of liability of one or some of the wrongdoers does not discharge the others."

■ In recent years this court has twice had occasion to apply the holding of *McKenna*. In *Hill v. McDonald*, 442 A.2d 133 (D.C.1982), and again in *Lamphier v. Washington Hospital Center*, 524 A.2d 729 (D.C. 1987), we summarized the governing principles as follows:

> In *McKenna*, the court held that the effect of a release of a joint tortfeasor was ordinarily a question of fact dependent on two inquiries: (1) did the plaintiff intend to release all wrongdoers or only the particular party named in the release; and (2) did the amount settled for fully compensate

the plaintiff, or was it taken merely as the best obtainable compromise for the settler's liability.... Only where the terms of the release "leave no room for doubt" should these decisions be made as a matter of law.

*Hill,* 442 A.2d at 138–139 (citations omitted); *see Lamphier,* 524 A.2d at 735 (quoting *Hill* ).

 In answering both of *McKenna* 's questions, we adhere to the doctrine that releases are contracts and should be construed according to established rules of contract interpretation. *See, e.g., Lamphier,* 524 A.2d at 732; *Giordano v. Interdonato,* 586 A.2d 714, 720 (D.C.1991) ("ordinary contract principles govern a release"); *Bolling Federal Credit Union v. Cumis Insurance Society,* 475 A.2d 382, 385 (D.C.1984); *Wolcott v. Ginsburg,* 697 F.Supp. 540, 544 (D.D.C.1988). Thus, in construing a release, a court must regard the parties' intentions as paramount. *Lamphier,* 524 A.2d at 732; *see Leiken v. Wilson,* 445 A.2d 993, 998 n. 7 (D.C.1982) ("the court must focus on the intent of the parties in order to determine whether a [release] operates to limit liability of only those who were party to the agreement or also limits liability of other joint tortfeasors" (citing *McKenna* )). "If the release is facially unambiguous, we must rely solely upon its language as providing the best objective manifestation of the parties' intent." *Bolling,* 475 A.2d at 385; *see 1010 Potomac Associates v. Grocery Manufacturers of America, Inc.,* 485 A.2d 199, 205 (D.C.1984). However, "if the document is ambiguous, extrinsic evidence of the parties' subjective intent may be resorted to." *Lamphier,* 524 A.2d at 732 (citation omitted); *see Giordano,* 586 A.2d at 720; *1010 Potomac Associates,* 485 A.2d at 205–206. The use of extrinsic evidence is also permitted "to determine the

circumstances surrounding the making of the agreement, so that it may be ascertained what a reasonable person in the position of the parties would have thought the words meant." *Lamphier,* 524 A.2d at 732 (citation omitted).

## B. *Other Jurisdictions*

Outside the District of Columbia, most jurisdictions that have abolished the common law rule have done so by statute,[1] choosing generally to adopt language from one of three model acts: the Uniform Contribution Among Tortfeasors Act § 4(a) (1955), 12 U.L.A. 264 (1996) (UCATA); the Uniform Joint Obligations Act § 4 (1925), 13 U.L.A. 422 (1986) (UJOA); or the Uniform Comparative Fault Act § 6 (1977), 12 U.L.A. 147 (1996) (UCFA).[2] Both UCATA and UCFA state that a joint tortfeasor is not discharged from liability by a release unless terms of the release so provide, whereas UJOA declares that joint tortfeasors are discharged unless the releasor expressly reserves his or her rights against them. In applying these statutes to individual cases, courts have generally adopted one of three rules of construction: (1) the "flat bar" or "absolute bar" rule; (2) the "specific identity" or "specific designation" rule; or (3) the "intent" rule. There is little consensus as to which one to follow, however, and none of the three appears to have captured the support of a majority of the courts.

### 1. *The "Flat Bar" Rule*

 The "flat bar" rule, which is most consistent with the traditional common law approach, holds as a matter of law that a general release is unambiguous and therefore provides for the discharge of *all* potential joint tortfeasors, both named and unnamed.[3]

1. Like the District of Columbia, a few states have abolished the common law rule by case law. *See, e.g., Posey v. Medical Center–West, Inc.,* 257 Ga. 55, 55–58, 354 S.E.2d 417, 417–419 (1987); *Richardson v. Eastland, Inc.,* 660 S.W.2d 7, 9 (Ky.1983); *McMillen v. Klingensmith,* 467 S.W.2d 193 (Tex.1971).

2. For a thorough discussion of the three model statutes, *see* Anne M. Payne, Annotation, *Release of One Joint Tortfeasor as Discharging Liability of Others Under Uniform Contribution Among Tort-*

*feasors Act and Other Statutes Expressly Governing Effect of Release,* 6 A.L.R. 5TH 883 (1992).

3. *See, e.g., Hodges v. United States Fidelity & Guaranty Co.,* 91 A.2d 473 (D.C.Mun.App.1952) (applying Maryland law); *General Motors Corp. v. Superior Court,* 12 Cal.App.4th 435, 440, 15 Cal.Rptr.2d 622, 625–626 (1993); *Arnold v. Burton,* 651 N.E.2d 1202, 1204–1205 (Ind.App. 1995); *Dobson v. Citizens Gas & Coke Utility,* 634 N.E.2d 1343, 1344–1345 (Ind.App.1994); *Eggleston v. State Farm Mutual Auto. Insurance Co.,*

Since the release is unambiguous within its four corners, extrinsic evidence of the parties' subjective intent may not be considered. *See, e.g., Douglas v. United States Tobacco Co., supra* note 3, 670 F.2d at 794–795; *Hodges v. United States Fidelity & Guaranty Co., supra* note 3, 91 A.2d at 473. Nor is it relevant, under the flat bar rule, that the unnamed tortfeasor (who seeks to assert the release as an affirmative defense) failed to pay consideration. *See, e.g., Morison v. General Motors Corp., supra* note 3, 428 F.2d at 953–954; *State Farm Mutual Auto Insurance Co. v. Reynolds, supra* note 3, 676 F.Supp. at 107. Because of the harshness of this broad approach, critics argue "that such a rule perpetuates the inequities of the common law rule and contravenes the legislative preference . . . for preserving the opportunity of an unknowing injured party to seek relief." *Sims v. Honda Motor Co., supra,*

225 Conn. at 409, 623 A.2d at 1000; *see also, e.g., Russ v. General Motors Corp.,* 111 Nev. 1431, 1435–1437, 906 P.2d 718, 721 (1995).

## 2. The "Specific Identity" Rule

■ The "specific identity" or "specific designation" rule provides that "the release of one tortfeasor does not discharge other tortfeasors unless the latter are named in the release or are otherwise specifically identifiable from the face of the instrument." *Moore v. Missouri Pacific R.R.,* 299 Ark. 232, 237, 773 S.W.2d 78, 80–81 (1989).[4] Under this theory, parol evidence that demonstrates a subjective intent to release all joint tortfeasors is immaterial. *See Britt–Tech Corp. v. American Magnetics Corp., supra* note 4, 463 N.W.2d at 29–30; *Bjork v. Chrysler Corp., supra* note 4, 702 P.2d at 162–163. Instead, only those tortfeasors specifically

21 Kan.App.2d 573, 906 P.2d 661, 662 (1995); *Richardson v. Eastland, supra* note 1, 660 S.W.2d at 9; *Pemrock, Inc. v. Essco Co.,* 252 Md. 374, 249 A.2d 711 (1969); *Slankard v. Thomas,* 912 S.W.2d 619, 625 (Mo.App.1995); *Rudisill v. Lewis,* 796 S.W.2d 124, 126 (Mo.App.1990); *Wells v. Shearson Lehman/American Express, Inc.,* 72 N.Y.2d 11, 22, 526 N.E.2d 8, 14, 530 N.Y.S.2d 517, 523 (1988) (applying New York and Delaware law); *Battle v. Clanton,* 27 N.C.App. 616, 621, 220 S.E.2d 97 (1975); *Republic Insurance Co. v. Paul Davis Systems of Pittsburgh South, Inc.,* 543 Pa. 186, 189–190, 670 A.2d 614, 615–616 (1995) (release given to a particular individual and "any and all persons" is unambiguous); *Buttermore v. Aliquippa Hospital,* 522 Pa. 325, 328–329, 561 A.2d 733, 735 (1989); *Hasselrode v. Gnagey,* 404 Pa. 549, 172 A.2d 764 (1961); *Haymaker v. General Tire, Inc.,* 187 W.Va. 532, 420 S.E.2d 292 (1992).

Federal decisions applying the flat bar rule under state law include *Taggart v. United States,* 880 F.2d 867, 870 (6th Cir.1989) (applying Michigan law); *Mussett v. Baker Material Handling Corp.,* 844 F.2d 760, 762 (10th Cir.1988) (applying Oklahoma law); *Auer v. Kawasaki Motors Corp.,* 830 F.2d 535, 539 (4th Cir.1987) (applying Maryland law), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1076, 99 L.Ed.2d 236 (1988); *Douglas v. United States Tobacco Co.,* 670 F.2d 791, 794–795 (8th Cir.1982) (applying Arkansas law); *Morison v. General Motors Corp.,* 428 F.2d 952, 953–954 (5th Cir.), *cert. denied,* 400 U.S. 904, 91 S.Ct. 142, 27 L.Ed.2d 141 (1970) (applying Arkansas law); *Sinelli v. Ford Motor Co.,* 810 F.Supp. 668, 672–674 (D.Md.), *aff'd,* 7 F.3d 226 (4th Cir. 1993); *Avemco Insurance Co. v. Cessna Aircraft Co.,* 780 F.Supp. 788, 790–791 (D.Utah 1991);

*State Farm Mutual Automobile Insurance Co. v. Reynolds,* 676 F.Supp. 106, 107 (W.D.Va.1987); *White v. American Motors Sales Corp.,* 550 F.Supp. 1287, 1290 (W.D.Va.) (applying North Carolina law), *aff'd,* 714 F.2d 135 (4th Cir.1983); *White v. General Motors Corp.,* 541 F.Supp. 190 (D.Md.1982); *Doganieri v. United States,* 520 F.Supp. 1093, 1097 (N.D.W.Va.1981).

4. *See also, e.g., Young v. State,* 455 P.2d 889 (Alaska 1969); *Lackey v. McDowell,* 262 Ga. 185, 186 & n. 3, 415 S.E.2d 902, 903 & n. 3 (modifying *Posey v. Medical Center–West, Inc., supra* note 1, by adopting "specific identity" rule); *Saranillio v. Silva,* 78 Hawai'i 1, 16, 889 P.2d 685, 700 (1995); *Alsup v. Firestone Tire & Rubber Co.,* 101 Ill.2d 196, 198–202, 77 Ill.Dec. 738, 740–741, 461 N.E.2d 361, 363–364 (1984); *Fernandez v. Tempel Steel Corp.,* 277 Ill.App.3d 330, 331–334, 214 Ill.Dec. 27, 29–30, 660 N.E.2d 218, 220–221 (1995); *Stro–Wold Farms v. Finnell,* 211 Ill. App.3d 113, 116, 155 Ill.Dec. 545, 547, 569 N.E.2d 1156, 1158 (1991); *Britt–Tech Corp. v. American Magnetics Corp.,* 463 N.W.2d 26, 29–30 (Iowa 1990) (citing *Aid Insurance Co. v. Davis County,* 426 N.W.2d 631, 632, 635 (Iowa 1988)); *Pickering v. Frink,* 123 N.H. 326, 331–332, 461 A.2d 117, 121 (1983); *Hansen v. Ford Motor Co.,* 120 N.M. 203, 211, 900 P.2d 952, 960 (1995) (adopting "a rebuttable presumption that a general release benefits only those persons specifically designated"); *Beck v. Cianchetti,* 1 Ohio St.3d 231, 233–236 & n. 3, 439 N.E.2d 417, 419–420 & n. 3 (1982); *Moss v. City of Oklahoma City,* 897 P.2d 280, 287–289 (Okla.1995); *Child v. Newsom,* 892 P.2d 9, 11 (Utah 1995); *Bjork v. Chrysler Corp.,* 702 P.2d 146, 162–163 (Wyo. 1985).

identified or designated [5] in the release may benefit from the agreement, regardless of whether they were parties to the release, and regardless of whether they paid or failed to pay consideration. *See Alsup v. Firestone Tire & Rubber Co., supra* note 4, 101 Ill.2d at 198–201, 77 Ill.Dec. at 740–741, 461 N.E.2d at 363–364. The stated justification for this rule is most often a desire to move away from the unfairness of the common law. *See, e.g., Child v. Newsom, supra* note 4, 892 P.2d at 11. Some courts also suggest that the specific identity rule provides the best method for ascertaining the parties' actual intent because it fulfills the legislative purpose of abolishing the common law rule, eliminates ambiguity, and precludes the unintended release of strangers to the contract. *See, e.g., Moore v. Missouri Pacific R.R., supra,* 299 Ark. at 240, 773 S.W.2d at 78; *Bjork v. Chrysler Corp., supra* note 4, 702 P.2d at 162–163.

Courts rejecting the specific identity rule assert that it reads statutory language (*e.g.,* "unless the release so provides") "more expansively than the legislature intended." *Sims v. Honda Motor Co., supra,* 225 Conn. at 411, 623 A.2d at 1000.

This approach interprets [the "so provides" language] as effectively prohibiting general releases, rather than merely abolishing the automatic legal effect of a release of one tortfeasor. Because the "specific designation" approach does not seek to ascertain the parties' actual intent, but simply replaces the legal construct of the common law rule with another legal presumption, this approach is inconsistent with the legis-

lature's choice not to prohibit general releases per se.

Moreover … courts adopting the "specific designation" rule appear to view the question of the effect of the release as one of statutory interpretation: what does "provide" mean? … [rather than] a question of contract interpretation: to what did the parties agree?

*Id.* at 411, 623 A.2d at 1000–1001 (footnote omitted); *see also, e.g., Russ v. General Motors Corp., supra,* 111 Nev. at 1435–1438, 906 P.2d at 721–722 ("requiring an express reservation would erroneously render the 'any other persons, firms, or corporations' language in a release completely meaningless").

### 3. The "Intent" Rule

A third approach to the construction of general releases takes a middle road:

Rather than presume that the parties' intent was fully expressed within the four corners of the release or that, despite the broad language of the release, the parties did not intend it to discharge all joint tortfeasors from liability, these courts consider extrinsic evidence of the parties' intent to determine the scope of the release.

*Sims, supra,* 225 Conn. at 412, 623 A.2d at 1001.[6] "Tortfeasors who are not parties to the release" bear the burden of proving "either that the release was intended to discharge them or that the releaser has received full compensation for the injuries sustained." *Neves v. Potter, supra,* 769 P.2d at 1053 (citing cases); *accord, Hansen*

---

**5.** Courts following the specific identity rule "generally hold that naming the released parties is not necessary if those parties are sufficiently described with terms such as 'employees' or 'the driver of the car.'" *Sims v. Honda Motor Co., supra,* 225 Conn. at 410, 623 A.2d at 1000.

**6.** *Accord, e.g., Lemke v. Sears, Roebuck & Co.,* 853 F.2d 253, 255 (4th Cir.1988) (applying Virginia law); *Irvin v. Griffin Corp.,* 808 F.2d 802, 804–805 (11th Cir.1987) (applying Alabama law); *Menendez v. Perishable Distributors, Inc.,* 763 F.2d 1374, 1377–1378 (11th Cir.1985) (applying Florida law, and Georgia law prior to *Posey v. Medical Center–West, Inc., supra* note 1); *Davis v. Brunswick Corp.,* 854 F.Supp. 1574, 1577 (N.D.Ga.1993); *McInnis v. Harley–Davidson Motor Co.,* 625 F.Supp. 943, 947 (D.R.I.1986); *Sel-*

*lon v. General Motors Corp.,* 521 F.Supp. 978, 984–986 (D.Del.1981); *Manos v. Trans World Airlines, Inc.,* 295 F.Supp. 1166, 1169–1170 (N.D.Ill.1968) (applying California law); *Neves v. Potter, supra,* 769 P.2d at 1055–1056 (applying Colorado law); *Chakov v. Outboard Marine Corp.,* 429 A.2d 984, 985–986 (Del.1981); *Hurt v. Leatherby Insurance Co.,* 380 So.2d 432, 433–434 (Fla. 1980); *Esterbrook v. State,* 124 Idaho 680, 863 P.2d 349, 353 (1993) ("all other persons" language creates ambiguity that raises question of fact as to intent of the parties); *Cram v. Town of Northbridge,* 410 Mass. 800, 803, 575 N.E.2d 747, 749 (1991); *Russ v. General Motors Corp., supra,* 111 Nev. at 1435–1437, 906 P.2d at 721–722.

*v. Ford Motor Co. supra* note 4, 120 N.M. at 205, 900 P.2d at 954.[7]

Advocates of the "intent" rule argue that both the "flat bar" and "specific identity" rules are too extreme and employ unwarranted legal fictions regarding the parties' intent. *See Sims, supra,* 225 Conn. at 412, 623 A.2d at 1001. "Logically it is the intentions of the actors, rather than the presence or absence of buzzwords, which should govern." *McInnis v. Harley–Davidson Motor Co., supra* note 6, 625 F.Supp. at 947. Critics suggest that the "intent" rule departs from the general principle that unambiguous contract provisions are to be given their plain meaning without reference to evidence outside the four corners of the agreement, *i.e.,* that the "intent" rule completely ignores the parol evidence rule. Supporters of the "intent" rule respond that rigid application of general rules of contract construction would frustrate the purpose behind the Uniform Acts. *See Sims v. Honda Motor Co., supra,* 225 Conn. at 415, 623 A.2d at 1003. These same courts also maintain that the parol evidence rule, which is riddled with various exceptions, does not prevent consideration of extrinsic evidence based on equitable principles—as, for example, when an unnamed tortfeasor seeks to take gratuitous advantage of a release to which he or she was not a party. *See Neves v. Potter, supra,* 769 P.2d at 1054; *Sims, supra,* 225 Conn. at 416, 623 A.2d at 1003.

### III. THE RESULT IN THIS CASE

Having examined the law in other jurisdictions, we conclude that the District of Columbia's case law, beginning with *McKenna v. Austin,* combines the less extreme aspects of the "flat bar" and "intent" rules. We agree with the "flat bar" rule to the extent that, as a matter of law, a release which is facially unambiguous is the best measure of the parties' actual intent. Nevertheless, to some

degree we follow the "intent" rule by resorting to extrinsic evidence if the terms of a release are not clear on the face of the document itself.

Turning to the specific release at issue here, we reiterate what we have said in countless other cases: that under Super. Ct. Civ. R. 56(c), a trial court may grant summary judgment only if there are no genuine issues of material fact for the jury to decide, and if the moving party is entitled to a judgment as a matter of law. *E.g., Colbert v. Georgetown University,* 641 A.2d 469, 472 (D.C.1994) (en banc). On appeal from an order granting summary judgment, this court must undertake an independent review of the record, "but the substantive standard applied is the same as that utilized by the trial court." *Id.* Accordingly, we review the record in the light most favorable to the party opposing the motion and resolve against the moving party any doubts about the existence of a material factual dispute. *Id.*

#### A. The Intent of the Contracting Parties as to Williams

*McKenna* requires us initially to ascertain whether the parties to the agreement intended to release all wrongdoers, including Williams, or only those joint tortfeasors specifically named in the release. This determination is a two-step process. The first step is to look at the language of the release and see if it unambiguously [8] reflects the parties' intent to confer a benefit on Williams, thereby releasing him from any potential liability. *See, e.g., Rivers & Bryan, Inc. v. HBE Corp.,* 628 A.2d 631, 635 (D.C.1993); *Giordano v. Interdonato, supra,* 586 A.2d at 720; *Sacks v. Rothberg,* 569 A.2d 150, 154 (D.C.1990). Our task is aided significantly by the *Lamphier*

---

**7.** Consideration of extrinsic evidence of the parties' intent is justified on various grounds. *Compare, e.g., Hurt v. Leatherby Insurance Co., supra* note 6, 380 So.2d at 434 (court must make initial determination that language in release is ambiguous before admitting extrinsic evidence to resolve that ambiguity), with *McInnis v. Harley–Davidson Motor Co., supra* note 6, 625 F.Supp. at 947; *Sims v. Honda Motor Co., supra,* 225 Conn. at 413–414, 623 A.2d at 1002; and *Neves v.*

*Potter, supra,* 769 P.2d at 1054 (extrinsic evidence is admissible to aid the court in ascertaining the parties' intent, regardless of whether the release is ambiguous or not).

**8.** "[T]he question of whether a contract is ambiguous is reviewed by this court *de novo.*" *Rivers & Bryan, supra,* 628 A.2d at 635 (citation omitted).

decision, which we think is dispositive on this particular point.

In *Lamphier* we were confronted with a general release containing language very similar to what we have here. The plaintiff, Mr. Lamphier, was injured in an automobile accident and was treated for his injuries at the Washington Hospital Center. After entering into a settlement and general release with the driver of the other car, Lamphier sued the hospital for negligent treatment of his injuries. In light of the surrounding circumstances[9] and the particular language used in the release, we held that the release was ambiguous. *Id.* at 732.

In this case as in *Lamphier*, the phrase "all other persons," when read in the context of the entire release, is "susceptible to more than one reasonable interpretation...."[10] *Rivers & Bryan, supra*, 628 A.2d at 635 (citation omitted). One can only guess, after reading it, whether the parties actually intended to release all possible tortfeasors involved in the accident, including those not specifically named in the release, or whether they meant only to release "all other persons, firms, associations or partnerships" connected with or succeeding to the interests of the specifically named releasees, Capitol Cab and Jefferson. In *Lamphier* we held that such a "lengthy string of successors in interest followed by the phrase 'all other persons, firms, or corporations' " was so imprecise as to "leave[ ] open the question whether the latter phrase is applicable only to successors in interest of an unnamed sort, rather than any and all other persons of whatever description." 524 A.2d at 732–733. We reach the same conclusion here. Because Williams does not clearly and unequivocally fall either within or beyond the scope of the phrase "all other persons," the release may be read as having at least two plausible meanings. Thus we hold that the release, on its face, is ambiguous in expressing the contracting parties' intent with respect to whether Williams was discharged from liability.

We therefore must take the second step in the *McKenna* process by looking to extrinsic evidence of the parties' subjective intent. Noonan contends that the trial court erred in failing, upon reconsideration of Williams' motion, to consider the affidavits of the parties to the release, which (he asserts) clearly showed the parties' intent to limit the scope of the release to Jefferson and Capitol Cab. Read closely, the affidavits do not support Noonan's argument; rather, they show only that Noonan and his counsel had such an intent. The affidavit submitted by counsel for Capitol Cab and Jefferson, on the other

---

**9.** One such circumstance in *Lamphier* was the fact that a successive tortfeasor (the hospital), which was allegedly liable for an injury separate and distinct from the one that was the subject of the release, was nevertheless seeking the benefit of the release. Here, however, we are presented with "a classic case of joint tortfeasors, each of whom is liable for the full amount of the injuries." *Lamphier*, 524 A.2d at 732 (citations omitted). Other courts have noted this distinction in refusing to extend coverage of the release to successive tortfeasors whose potential liability is different from that of the releasees. *See, e.g., Youngren v. Presque Isle Orthopedic Group, Inc.*, 876 F.Supp. 76, 78–79 (W.D.Pa.1995); *Morgan v. Cohen*, 309 Md. 304, 523 A.2d 1003 (1987); *Gagnon v. Lakes Region General Hospital*, 123 N.H. 760, 465 A.2d 1221, 1223 (1983) (New Hampshire's joint tortfeasor statute "is inapplicable ... because the defendant physicians and hospital are not joint tortfeasors *vis-à-vis* the driver of the automobile who settled with the plaintiff"); *Shadden v. Valley View Hospital*, 915 P.2d 364, 365 (Okla.1996) (UCATA applies only to the extent that successive or independent tortfeasors share a common liability for patient's injuries); *Carmichael v. Beller*, 914 P.2d 1051, 1052 (Okla.

1996) (same). The usual rationale for such decisions is that a "separate cause of action would exist against the [successive tortfeasor] for the harm caused by the independent and intervening acts or omissions ... and under no theory would the release ... be considered a discharge of it." *Shadden, supra*, 915 P.2d at 365.

In our view, this distinction between *Lamphier* and the present case, while certainly a factor to be considered in the interpretation of general releases, does not in itself resolve the ambiguity issue. *Lamphier* "simply recognizes that different rules may apply where two tortfeasors sequentially commit independent harms...." *National Health Laboratories, Inc. v. Ahmadi*, 596 A.2d 555, 562 (D.C.1991).

**10.** The fact that the parties to a release—or any contract—disagree on the meaning of one of its terms does not make the document ambiguous. *See Sacks v. Rothberg, supra*, 569 A.2d at 150–151; *Stamenich v. Markovic*, 462 A.2d 452, 456 (D.C.1983) (citing cases). Rather, "contractual language is ambiguous if it is susceptible to more than one reasonable interpretation...." *Rivers & Bryan, supra*, 628 A.2d at 635.

hand, states simply that "[i]t was the intention of the parties to resolve through this settlement Mr. Noonan's possible claims against Hubert Jefferson and [Capitol Cab], its heirs, agents, etc." What this statement does not say, or even suggest, is that the scope of the release was limited to those specifically named releasees. Thus there is a conflict, or at least an ambiguity, in the affidavits themselves, so that the extrinsic evidence in the record does not illuminate the parties' intent any more than the release itself.

Plainly stated, the phrase "all other persons" is sufficiently ambiguous to raise a contested issue of fact as to the intent of the parties when they agreed to the release. For this reason, we hold that the trial court erred in ruling as a matter of law that Williams was discharged from liability by that release.

### B. *Full Satisfaction*

*McKenna* also requires us to ask whether the amount of the settlement fully compensated Noonan, or whether it was "taken merely as the best obtainable compromise for the settler's liability." *Hill v. McDonald, supra*, 442 A.2d at 138–139 (citing *McKenna*). Noonan, for obvious reasons, argues that the $25,000 settlement with Capitol Cab and Jefferson did not fully compensate him for his injuries; Williams, of course, argues to the contrary.

It is well settled that "generally an injured party may not recover doubly, in whole or in part, for the same injury; otherwise he would be unjustly enriched." *Lamphier*, 524 A.2d at 734 (citing *McKenna*, 77 U.S.App. D.C. at 233, 134 F.2d at 664). The record on appeal, however, contains no information on the extent of Noonan's injuries, nor does it reveal whether the release was intended to provide full compensation. Thus we cannot really determine whether the $25,000 "in fact compensated [Noonan] for all his injuries, and if not, whether nevertheless he received it intending that it serve as full satisfaction." *Lamphier*, 524 A.2d at 735 n. 12.

Once again *McKenna* provides some guidance on this point:

> The difficulty is in how it shall be determined whether full indemnity has been received. This will vary with circumstances. Facts and intentions, rather than presumptions from the mere fact of settlement, should control.... Ordinarily, the claimant will not secure complete indemnity from one or less than all, unless the others are judgment proof. Such a settlement usually would not be advantageous to the settling wrongdoer. The presumption of fact therefore generally would be against full satisfaction and discharge. It would seem conclusive when rights against those not released are reserved explicitly or intention otherwise appears to keep these claims alive. Whether the settlement is made and accepted as full satisfaction or merely as the best obtainable compromise for the settler's liability is the crucial issue, and ordinarily one of fact. If however, the agreement's terms leave no room for doubt, the decision should be made as a matter of law.

77 U.S.App. D.C. at 233, 134 F.2d at 664. Thus, if there is any "room for doubt," a court cannot conclude that a settlement such as the one we have here fully satisfied all of the plaintiff's claims.

As we explained in *Lamphier*, this approach almost invariably brings us back to the terms of the release itself. 524 A.2d at 735. And in this case, as in *Lamphier*, there is decidedly room for doubt which prevents us from saying, as a matter of law, that the $25,000 was accepted in full settlement of Noonan's claims as the best available compromise. We do not know, for example, how badly injured he was, how much he had to pay his doctors, or how much time (if any) he lost from work. We hold, therefore, that the "presumption ... against full satisfaction and discharge," to which *McKenna* referred,[11] bars summary judgment for this reason as well.

11. 77 U.S.App. D.C. at 233, 134 F.2d at 664.

## IV

Because there are unresolved issues of material fact, the trial court erred in granting summary judgment for Mr. Williams. The judgment is accordingly reversed, and this case is remanded for further proceedings.

*Reversed and remanded.*